Argued September 24, decided October 7, 1913.

## LATOURETTE v. MILLER.

(135 Pac. 327.)

**Appeal and Error—Conflict in Record.**

1. A statement of testimony set forth in the bill of exceptions and certified by the trial judge governs in case of conflict between it and a statement in writing of the objections made and exceptions taken and what purports to be a transcript of the testimony taken by the official stenographer.

**Evidence—Opinions—Compensation of Attorney.**

2. Where no uniform scale of attorneys' fees has been agreed upon, a reasonable compensation for the services of one attorney cannot be determined by another attorney's idea of what would be a reasonable fee for such services rendered by himself.

**Appeal and Error—Review—Harmless Error.**

3. In an action by an attorney for compensation, the admission of evidence of what another attorney thought would be a reasonable compensation for a similar service is harmless, where the trial was to the court, for that tribunal can separate the material from the immaterial evidence.

**Evidence—Expert Evidence—Hypothetical Questions.**

4. If an expert witness is present in court and has heard the testimony given, his opinion may be given upon the assumption of the truth of such testimony without the necessity of a hypothetical question.

**Evidence—Opinion Evidence—Expert Testimony—Questions.**

5. Where there is no conflict in the testimony upon material facts, an expert's opinion may be based upon a question not stated hypothetically; consequently, in an action by an attorney for compensation, where there was no controversy over the services rendered, a question to another attorney, testifying as an expert on attorneys' fees, might properly assume the rendering of such services.

**Evidence—Opinion Evidence—Expert Testimony.**

6. In an action for attorneys' fees, where defendant had employed other counsel besides plaintiff, evidence of the rendition of services by the other counsel might be disregarded in a question to another attorney, testifying as an expert as to what would be a reasonable compensation for plaintiff's services.

**Appeal and Error—Review—Verdicts.**

7. Where a verdict is supported by the evidence, it cannot be reviewed on appeal.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   Statement by MR. JUSTICE MOORE.

This is an action by H. F. Latourette against Frank L. Miller to recover $750, the remainder of an alleged attorney's fee for services performed by plaintiff's assignors, on account of which $100 had been paid.

The answer denies that $850 is a just fee, or that any sum in excess of $100, the amount paid, is reasonable. The cause was tried without the intervention of a jury, and from the testimony taken findings of fact and of law were made and based thereon, judgment was given the plaintiff for $700, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of *Mr. F. W. Bronn* and *Mr. Edward D. Ulrich,* with an oral argument by *Mr. Bronn.*

For respondent there was a brief, with oral arguments by *Latourette & Latourette.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended by defendants' counsel that errors were committed in admitting, over objection and exception, certain testimony, and that the judgment and findings are excessive.   These assignments will be considered in the order mentioned.   John R. Latourette,

a witness for plaintiff, testified in effect that Martha
E. Fritz commenced an action in the Circuit Court of
the State of Oregon for Multnomah County against
Frank A. Miller, the defendant herein, to recover
$50,000 as damage for an alleged breach of promise of
marriage; that Miller thereupon retained an attorney,
who filed an answer in that action, denying the alleged
promise; that thereafter, in order to obtain assistant
counsel, Miller engaged the witness and H. F. Latour-
ette, partners, as Latourette & Latourette, stipulating
in writing to pay them a reasonable sum for their ser-
vices; that having examined numerous letters received
by Miller from Martha E. Fritz, the firm so engaged
concluded that he had promised to marry her, but that
subsequently she abandoned the contract and released
him from his promise, whereupon an amended answer
was filed alleging the facts disclosed by the letters;
that for about three months the witness and his part-
ner were occupied in carefully examining the law ap-
plicable to their theory of the case; that they ascer-
tained what the real character of Martha E. Fritz was,
and where she had been for four years immediately
prior to the beginning of her action; that they dis-
covered that Miller had paid her about $6,500, and that
she had spent three months in Oregon visiting at his
home; that the firm of which the witness was a mem-
ber had made thorough and careful preparation for
the trial of the action; that when the case was set down
for hearing they were present in court at the time
appointed for that purpose; that owing to the con-
gested condition of the docket the cause went over
from day to day for five days, during which time the
witness and his partner were in attendance upon
court; that at the end of that time Miller notified them
that the plaintiff in that action would not appear for
trial, whereupon they secured a judgment of dismissal
against her; that the charge of $850 had been made as

a reasonable fee; that the sum of $100 had been paid as retaining fees; and that the firm had assigned the claim for the remainder to the plaintiff, H. F. Latourette.

Miller, as a witness in his own behalf, does not deny any of the statements thus made, and, referring to a period of four or five days during which the members of the firm were engaged in preparing for trial, testified as follows:

"They worked longer, but they put the time on the letters."

"Q. These letters, comprising from 75 to 100 from the woman to you, which they systematized, and perfected and got ready for trial?

"A. So I understood."

A. E. Clark, a witness for the plaintiff, having testified that he was an attorney in active practice, and had prepared for the trial of actions for breaches of promise of marriage, was interrogated as follows:

"Q. Did you hear the statement of John R. Latourette on the stand, as to what service he performed in the case at bar?

"A. I came in when he was testifying in regard to his being called into the case.

"Q. I will ask you this question: In a case of this kind, where the attorney is retained by the defendant in a breach of promise case, in which the defendant is sued for $50,000 damages, and after some other attorney has prepared the pleadings, and under the agreement between the defendant and the supposed attorney that a reasonable fee would be paid for such services, and then after the answer is withdrawn and an amended answer is put in, the first having denied any promise to marry, and the second answer having admitted the promise of marriage and pleading a revocation of it afterward; the examination of some 75 to 100 letters which had passed from plaintiff to

defendant, a large number of which showed the direct promise of marriage; and the greater portion of three months' time having been put in by the attorney in ascertaining who the plaintiff was, and what she was and where she was; and it appearing that there had been more or less intimate relations during the period of four years between plaintiff and defendant, and a large portion of that time defendant gave money to plaintiff, in the aggregate of about $6,500, and the letters showing a promise of marriage—now, in the case of the attorney who took that case, and got it ready for trial by amending the pleadings, studying the law of the case, studying the evidence, making a detailed proof of the correspondence, having the case set for trial, appearing for trial, the case went over the first day and then for five days, and, the plaintiff failing to appear at all, judgment was taken in favor of the defendant, and against the plaintiff, what would you consider the reasonable value of such services?"

The defendant's counsel objected to the question on the grounds that it did not conform to the evidence adduced, and that no proper foundation had been laid for the introduction of the testimony desired. The objection was overruled and an exception allowed.

The witness replied: "Taking your statement into consideration with the evidence I heard Mr. Latourette give, I would say a fee anywhere from $1,100 to $1,200 would be a very reasonable fee, and such as I would charge for similar service." No motion was interposed to strike out what the witness would have charged for similar service.

George W. Stapleton, as plaintiff's witness, testified that he was engaged in the practice of law, having had several years' experience; that he had made preparation for the trial of an action for a breach of promise of marriage. He was then interrogated as follows:

67 Or.—10

146 LATOURETTE v. MILLER. [67 Or.

"Q. Let me ask you, were you in the room when Mr. Latourette testified?

"A. I was here at the trial, at the end of it, when I heard the same question put to Mr. Clark.

"Q. I will ask you what you would consider a reasonable fee in a case of that kind?"

The defendant's counsel thereupon objected to the question on the same grounds as hereinbefore stated. The objection having been overruled and an exception allowed, the witness answered: "Based upon the question propounded to Mr. Clark, I would say anywhere from $800 to $1,200 would be a reasonable fee." In the transcript of the testimony the concluding part of the conditional question put to Mr. Clark was: "What would you consider the reasonable value of your services?" If the estimate of that attorney would have been deemed a reasonable fee, had he rendered the service, was the answer sought from Mr. Clark, then Mr. Stapleton also expressed a like opinion; for it will be remembered that his value of the labor performed was "based upon the question propounded to Mr. Clark."

It is argued by defendant's counsel that whatever charges these expert witnesses would have made if they or either of them had performed the services rendered by Latourette & Latourette were immaterial, and, this being so, errors were committed in permitting the questions to be answered. No objections to the inquiries submitted to either of the attorneys was made on the ground that the answers sought were immaterial or incompetent, and for that reason the attention of the trial court was not called to the errors argued in the brief of defendant's counsel. Besides, the bill of exceptions, in setting forth the question put to Mr. Clark, shows that the inquiry is concluded, as hereinbefore quoted, with the sentence: "What would you consider the reasonable value of such services?"

thereby meaning the services rendered by Latourette & Latourette.

1. A statement of testimony as set forth in a bill of exceptions, which is certified to as being correct by the trial judge, is binding upon a court of appeals, when there is any conflict between the statement in writing of the objections made and the exceptions taken by a party during the trial of a cause and what purports to be a transcript of the testimony given on that occasion as taken and reported by an official stenographer: *Singer Mfg. Co.* v. *Graham,* 8 Or. 17 (34 Am. Rep. 572); *Kimery* v. *Taylor,* 29 Or. 233 (45 Pac. 771). It must therefore be taken as true that the question put to Mr. Clark terminated with an inquiry as to his opinion of the value of the services stated to have been performed, and not an estimate of the worth of like employment, had it been rendered by that witness.

2, 3. It will be kept in mind that after estimating what he considered "a very reasonable fee" Mr. Clark further said, "and such as I would charge for similar service." As the cause was tried without a jury, the court was able to separate the material testimony from the unimportant declarations of the witness, though no motion was made to strike it out. It must be admitted that whatever sum of money one attorney would consider a reasonable fee if he had performed a stated service is not always the standard of value had the service been rendered by another lawyer. No uniform scale of attorneys' fees has been agreed upon by the members of the profession, nor can unvarying prices for particular service be well prescribed so as to make any law in relation thereto universal in its application, except a public prosecutor, or the compensation to be paid to the person appointed by the court to defend a criminal, for the successful lawyer who has had much experience and possesses a reputation for rectitude

of conduct can usually command and receive a greater remuneration for his services than is generally paid to an attorney who has not so much legal wisdom or less experimental knowledge. The concluding part of Mr. Clark's answer to the conditional inquiry, though immaterial, was evidently not prejudicial.

4, 5. Mr. Clark in answer to the preliminary question, "Did you hear the statement of John R. Latourette on the stand as to what services he had performed in the case at bar?" replied, "I came in when he was testifying in regard to his being called into the case." Having thus answered, the conditional question, as set forth in the bill of exceptions, was propounded to him as to his opinion of what sum of money would be considered a reasonable fee for a performance of the services rendered. It is contended by defendant's counsel that in answering the conjectural inquiry the witness contemplated the testimony given by Mr. Latourette, only a part of which he had heard; that, such being the case, there was no certainty of fact as a predicate for Clark's reply to the question; that if he had heard Latourette's previous sworn statements as to the extent of the services performed by another attorney, before his firm was retained in the case, the answer given might have been different; that no proper foundation was laid for the introduction of opinion evidence, and hence an error was committed in overruling the objection, interposed on that ground, and in permitting a reply to the inquiry. There is no controversy whatsoever respecting the quantum of services performed for Miller by Latourette & Latourette, the only issue being the measure of compensation to which these attorneys were entitled, upon which issue no testimony was offered by the defendant. The probable purpose sought to be accomplished by asking Clark if he had heard Latourette's testimony was to

avoid the necessity of repeating the sworn statements thus made, for it has been held that if an expert witness was present in court and heard the testimony when given, the question might be put to him whether, if the facts so testified to were true, he could base an opinion thereon, and what that opinion was: *Dickerson* v. *Fitchburg,* 13 Gray (Mass.), 546, 556. If there is no controversy in the testimony, and such sworn statements are not voluminous, a court in its discretion may allow counsel to put the question, on an assumption of the truth of the statement, to an expert witness, without any recapitulation of the testimony so given: Rogers, Ex. Test. (2 ed.), § 28. Where the opinion of an expert is required on the testimony of another witness, which statements made upon oath are not embraced in a hypothetical question, it should appear that the expert heard such testimony when it was given: *Howland* v. *Oakland etc. Ry. Co.,* 115 Cal. 487, 495 (47 Pac. 255). When there is no conflict in the testimony upon material facts, the question need not be stated hypothetically: Rogers, Ex. Test. (2 ed.), § 31. Since all of Latourette's testimony had not been heard by Clark, it was necessary to state to him in the conditional question all the material facts that had been established.

6. Any testimony given by John R. Latourette as to services performed by another attorney in the case of *Fritz* v. *Miller* was immaterial, and unnecessary to be stated in the question put to the expert, since the measure of the recovery herein was based on the value of the services rendered by the firm of Latourette & Latourette alone. The question put to Mr. Clark, which inquiry was also considered by Mr. Stapleton, embraced sufficient facts testified to by Mr. Latourette to enable the expert witness to formulate intelligent

opinions based thereon.   No error was committed in the respects alleged.

7. As the cause was heard without the intervention of a jury, and as Stapleton's least estimate of $800 as a reasonable fee was adopted, and the court, after deducting $100, the sum paid, found that $700 remained due, such conclusion of fact is amply supported by evidence and cannot be reviewed.

The judgment based upon such finding should be affirmed, and it is so ordered.     AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.