Argued February 10; modified April 20; rehearing denied
May 11, 1937

IN RE BAKER'S ESTATE

BAKER *v.* MOODY ET AL.

(67 P. (2d) 185)

*Leland J. Decker*, of Portland (Bannon & Decker, of Portland, on the brief), for appellant.

*Loyal H. McCarthy*, of Portland, for respondent.

ROSSMAN, J. We shall refer to the petitioner (appellant) as the plaintiff and to the three respondents as the defendants. The decree which is under attack was entered by the circuit court of Multnomah county, probate department, July 7, 1936. Briefly stated, it (a) recites a stipulation of the parties authorizing the court to determine the value of plaintiff's curtesy rights, exempt property rights and homestead rights in an apartment house property belonging to the estate of his deceased wife, Bertha I. Baker, upon the assumption that the property was worth $9,500; (b) dismissed a proceeding instituted by the plaintiff for a declaratory judgment; (c) authorized the defendants to borrow upon the security of the property enough money to enable them to pay the plaintiff $3,000 and discharge accumulated taxes and the cost of administering upon the estate; and (d) directed the plaintiff and his wife to deliver to the defendants instruments conveying title to the latter to the apartment house property and its furnishings upon receipt of $3,000, and provided that if they failed to deliver such instruments the decree should serve in lieu thereof.

The plaintiff is the widower of Bertha I. Baker who died August 23, 1931, leaving an estate which consisted, among other items, of the apartment house property

above mentioned and described in *Moody v. Baker*, 142 Or. 559 (20 P. (2d) 1069). That decision, which was announced April 18, 1933, after describing the property as a three-story apartment house, appraised as worth $17,500, held that the plaintiff was entitled to a homestead interest in it of the value of $3,000. May 25, 1933, the circuit court, probate department, entered the mandate of this court in an order which set apart to the plaintiff as a homestead the entire property. June 1, 1933, the court, in a decree which stated that the order just described was entered through error, set it aside and awarded to the plaitiff "a homestead exemption to the extent of and limited to $3,000 in the one-half of Lot Six (6) and the south half of Lot Seven (7) in Block Two Hundred Twenty-four (224), city of Portland, county of Multnomah, state of Oregon, which said homestead exemption is a fee simple right and interest in and to said described property, together with the apartment house and appurtenances therein, to the extent of $3,000 free and clear of any and all incumbrances of any kind upon the same and of any claims against the estate. * * * Said Joseph W. Baker is entitled to the personal property of said deceased exempt by law from execution and said exempt personal property is not subject to administration". October 4, 1935, the court made an order which, referring to the plaintiff, stated: "The widower is entitled to pictures and musical instruments owned by the deceased, and as selected by the widower, to the value of $75. The widower is entitled to household furniture, actually kept and used by the decedent in her family, set forth in the widower's demand therefor, to the extent of $300 in value, but is not entitled to any of the household furniture used in the other apartments for rental purposes." December 26, 1934, the

defendant-executors filed a report which contemplated that action be taken towards closing the estate. This report recited that the statutory executors' fee would be $643, that their attorney believed he was entitled to $2,500 as compensation for his services, that unpaid taxes amounted to $1,286.60, and that, in addition to bequests of specific items of personal property, cash bequests amounting to $4,500 were payable upon the sale of the real property of the estate. The report showed a cash deficit of $28.75. In concluding the report the defendants prayed that the court authorize them, among other items, "to borrow sufficient money with which to pay off the homestead right of the widower". After this report had been filed the plaintiff presented written objections to the grant to the defendants of authority to borrow money upon the security of the estate's property. April 18, 1935, before any action had been taken upon this petition, the plaintiff filed a demand for numerous items of personal property enumerated in the demand. He claimed these "under the exemption rights allowed him under order of the above entitled court, dated the 3rd day of May, 1932". The order just mentioned is the same one which set aside to him a homestead interest in the apartment house property and which was affirmed by this court in the decision already cited. The demand further stated: "Demand is hereby made for the immediate possession of the homestead as awarded to Joseph W. Baker, under order of court dated May 3, 1932." October 4, 1935, the court entered an order which, after mentioning the demand which we have just quoted, stated: "It appearing that the executors have offered to pay said Joseph W. Baker the sum of Three Thousand ($3,000) Dollars for said homestead interest, provided said Joseph W. Baker would execute and deliver to

said executors a good and sufficient deed of his said property; and it appearing that said widower has refused and still refuses to execute such deed; and it further appearing to the court that the nature and character of said described real property can not be divided for the purpose of carving out said homestead right, and that it will be necessary to sell said real property in order to set aside to the said Baker his aforesaid homestead interest; * * * and it further appearing that the probable value of said real property is the sum of $15,000 or thereabouts * * * and it further appearing that it will be necessary to obtain the services of a real estate broker to make such sale; and the attorneys for the respective parties in open court having agreed that the usual and customary broker's commissions for such sale might be paid by the executors herein * * * Now, therefore, it is here now ordered as follows: (I) That the executors proceed to sell, subject to confirmation by this court, at private sale for the purpose of paying off the homestead interest of the widower, Joseph W. Baker, the foregoing described real property * * *; (II) That in case it becomes necessary to obtain the services of a real estate broker, said real estate broker's commission may be deducted from the net proceeds of such sale, from which said proceeds there shall first be paid to Joseph W. Baker, widower, the sum of $3,000, which shall be in lieu of and in discharge of the homestead interest of said Joseph W. Baker, and the balance of the proceeds shall be turned into court, or held by the broker making the sale, subject to such curtesy rights therein as may hereafter be fixed by the court. * * *''

The order directed that upon a sale the executors, the residuary devisees, the plaintiff and his wife should sign the necessary deed. In a report filed January 27,

1936, the defendants stated that the best offer they had been able to obtain for the property was from one Joseph P. Peters, who offered to purchase it (furnishings included) for the sum of $9,500 cash. The report stated that a real estate agent's commission was payable out of the price, and that the defendants believed it inadvisable to accept the offer.

April 1, 1936, the court entered findings of fact which, after referring to the defendants' report which we have just reviewed, set forth that following its receipt "the court thereafter notified the attorney for the executors and the attorneys for the widower, Joseph W. Baker, to appear in court for consideration of said offer of purchase, whereupon Mr. Decker, of attorneys for Joseph W. Baker, stated in open court that the offer of Ninety-five Hundred ($9,500) Dollars was satisfactory to the widower, Joseph W. Baker. Loyal H. McCarthy, as attorney for the executors, thereupon stated that the executors deemed it inadvisable to sell at said price of Ninety-five Hundred ($9,500) Dollars, that a sale at said price would result in wholly defeating the purpose of the testatrix to properly provide for her mother, Ida S. Moody; but that the executors were willing to have the court fix the amount payable to the widower, Joseph W. Baker, in lieu of his homestead claim, his curtesy claim and his exempt property claims based upon a property valuation of Ninety-five Hundred ($9,500) Dollars for all of the said property so offered to be purchased by Joseph P. Peters. It was thereupon stipulated and agreed by the attorneys for the respective parties that the interests of all the parties concerned would be best conserved by bringing about a segregation of the property rights based upon said valuation of Ninety-five Hundred ($9,500) Dollars,

and it was further stipulated by said parties through their respective attorneys that the court might fix the amounts payable to Joseph W. Baker in lieu of his homestead claim, his claim for curtesy and his claim for exempt property the same as if said sale to Joseph P. Peters had been consummated in accordance with the offer to purchase. It was further stipulated by the said parties through their respective attorneys that said Joseph W. Baker would execute, and cause to be executed, and deliver to the court such deeds and instruments as might be required to pass all right, title and interest of the said Joseph W. Baker and those claiming under him in and to said real and personal property, which said deed and instruments were to be held by the court in escrow to be delivered to the executors upon paying the said Joseph W. Baker all sums of money owing. * * * It was further stipulated by said parties through their respective attorneys that the executors might be permitted to mortgage any or all of the real and personal property known as the Landore Apartments and its furnishings for the purpose of providing money with which to pay the aforesaid sums of money so found to be owing to the said Joseph W. Baker. * * * The attorneys for the widower having indicated a desire to have the amounts payable to the widower, Joseph W. Baker, definitely fixed by the order to be entered by the court in connection with the foregoing proceedings, and attorneys being unable to agree upon the question of the liability of the widower, Joseph W. Baker, for the payment of taxes or rent, the claims of the respective parties were set forth in written briefs filed with the court, argued by counsel for the respective parties and submitted to the court for its decision, based upon the reports of the executors, the reports of Metzger-Parker Company, the analysis

of these reports as furnished by attorneys for the respective parties, and upon the briefs and arguments.''

Following these statements are the findings of fact which we shall now review. They state that the plaintiff had had the exclusive possession of Apartment No. 14 since the death of his wife, August 23, 1931, without payment of rent; that since the plaintiff remarried he and his present wife had the possession of Apartment No. 5 since March 1, 1934, without payment of rent; that both of these apartments are furnished with furniture in which neither the plaintiff nor his wife had any interest; that the rental value of Apartment No. 14 has never been less than $15 per month and was $22.50 per month for some time subsequent to the testatrix's death; that the rental value of Apartment No. 5 has never been less than $25 per month; and in addition to the use of the apartments the plaintiff had, without payment, the following services: heat, water, gas, electricity and janitor; that the defendants have also occupied apartments in the building without payment of rent; and that the rental value of all the apartments was equal to the cost of operations, but that due to the fact that the plaintiff and the defendants have paid no rent, the income has been insufficient to discharge operating expenses and, therefore, the payment of taxes amounting to $1,912.50 has been neglected. We now quote from the findings: ''The executors, by their attorney, have repeatedly offered in open court to pay to said Joseph W. Baker Three Thousand ($3,000) Dollars for his homestead interest upon receiving a deed for said homestead interest, and thereupon close the estate, or, if the said Joseph W. Baker desired to retain his interest in said property but was dissatisfied with the management of the property by the executors, to permit the said Joseph W. Baker to manage said

apartment house property himself.  *  *  *  The said Joseph W. Baker, through his attorneys, has repeatedly stated in open court that he would not execute a deed for his homestead interest upon payment of said Three Thousand ($3,000) Dollars, and that he would not take the management of said apartment house property." The findings calculated that, based upon the proportion which $3,000 bears to the assessed valuation of the apartment house, the plaintiff was chargeable with $604.50 of the unpaid taxes. The findings also found that the reasonable rental value of Apartment No. 5 since the plaintiff and his present wife occupied it (March 1, 1934, to April 1, 1936) was the sum of $625, and computed the value of the plaintiff's curtesy right in the apartment house as follows: The plaintiff, being 67 years of age, had a life expectancy of 7.21699 years; three thousand ($3,000) dollars (the homestead value) deducted from $9,025 leaves a balance of $6,025; and one-half of this sum, of $3,012.50, becomes the basis for computing the value of the curtesy right; four per cent interest upon this sum produces $120.50 annually, which, when multiplied by 7.21699, yields $869.65 as the value of the curtesy interest. To this it added $300 (the value of the exempt household furnishings) and $75 (musical instruments) making a total of $1,244.65, or $16.12 less than the total charges against the plaintiff. The conclusions of law determined that, since the charges against the plaintiff were greater than the sums due him as the value of his curtesy, household furnishings and musical instrument values, there was nothing due him except the value of his homestead interest in the apartment house. The conclusion of law determined that he "should execute and acknowledge and cause to be executed and acknowledged by his wife a good and sufficient deed" for the apartment

house property and deliver the same to the court in escrow to be turned over to the defendants whenever they paid the plaintiff the sum of $3,000. They also determined that the defendants should be authorized to borrow upon the security of the real and personal property constituting the apartment house enough to enable the defendants to pay the plaintiff $3,000 and discharge the taxes and cost of administration. April 9, 1936, being eight days after the findings of fact and conclusions of law which we have just reviewed were signed and filed, the plaintiff's counsel tendered objections to them which excepted to the statement "that a stipulation had been entered into concerning having the rights of Joseph W. Baker determined on the basis of the $9500.00 offer. The said Joseph W. Baker agreed that the sale be made to Joseph W. Peters at the price of $9500.00, but did not agree to anything else". The objections also stated that the parties had not stipulated that a deed should be deposited in court and had likewise not stipulated that the property be mortgaged. We quote from the objections: "No stipulation had been entered into and that the attorneys for the said Joseph W. Baker refused to sign any stipulation and refused to consent to any order, and refused to sign any stipulation at all, and that no stipulation was ever entered into." Then follow objections to virtually every paragraph of the findings most of which were based upon contentions that the findings were not supported by any evidence and were not preceded with pleadings. Plaintiff's counsel on the same day proposed for signing findings of fact and conclusions of law preceded by recitals which stated: That on October 3, 1935, the court found the apartment house property could not be divided; that it was necessary to sell it in order to pay to the plaintiff the value

of his homestead and curtesy interests; that on January 27, 1936, an offer was made by a prospective buyer to pay for the property $9,500; that the plaintiff was willing that it be sold for that sum; that "said sale should be confirmed and the property sold to the person making said bid * * * and that upon a sale of same that said curtesy interest should be fixed and turned over". Without setting forth a full review of the findings which follow these recitals, we mention the following items: They state that for 30 months the plaintiff occupied Apartment No. 14, and that its rental value was $15 per month, and that for 24 months he occupied Apartment No. 5 with a rental value of $25 per month; and that the defendants also occupied apartments without paying rent. The findings are followed with a proposed conclusion of law that the plaintiff is chargeable with neither rent nor taxes.

April 28, 1936, the plaintiff filed in this proceeding a pleading entitled a petition which terminated with a prayer for a declaratory judgment. In 35 paragraphs he reviewed the entire course which had been pursued concerning the estate since the death of the decedent. The prayer is divided into 21 sub-divisions which seek the construction of orders, alleged rights and sections of our code. To this petition the defendants filed an answer which admitted some of the averments of the petition and denied others. The answer also contained averments of new matter. Next, the plaintiff filed a reply. June 5, 1936, a citation was served upon Mona Baker, wife of the plaintiff, directing her to appear and show cause, if any she had, why she should not execute a deed in harmony with the findings of fact of April 1, 1936.

July 7, 1936, the court entered its decree in which it stated the attorneys "having stipulated in open court

to submit to the court upon the records and files in said probate proceedings, including the reports of Metzger-Parker Company, the various applications of the widower for the segregation of his homestead and exempt property rights and the fixing of his curtesy right to determine the sums payable to said widower by reason of all of said rights and upon an agreed valuation of '$9,500 as the sale price of the Landore Apartments and furnishings including the exempt property of the widower. * * * The widower, Joseph W. Baker, through his attorneys, Bannon and Decker, agreed in open court that the curtesy rights and exempt property rights of the said Joseph W. Baker should be fixed and adjusted by the Court, and all of the property rights of the said widower be determined to the same extent as if a sale of the North half of Lot 6, and the South half of Lot 7, Block 224, city of Portland, Multnomah county, state of Oregon, also known as the Landore Apartments, together with all of the furnishings therein had been sold under order of Court at the sale price of $9500.00 * * *''. The decree, referring to the declaratory judgment petition, stated that it was "examined by the court and found to contain no matter which could be properly entertained by the court at said hearing other than matters which had already been decided by the court''. It stated that opportunity was afforded to Mona Baker, plaintiff's wife, to present testimony if she desired concerning the matters mentioned in the citation, but that she refused to testify. The decree adjudged that the plaintiff's rights arising out of curtesy and exempt property were offset by sums owing by him to the estate for taxes and rent and that, therefore, he was "not entitled to any sum whatever in lieu of the curtesy and exempt property rights'' in the estate, but that he should be paid $3,000 for his

homestead interest in the apartment house property. The decree directed that the plaintiff and his wife, upon receipt of that sum of money, should execute and deliver to the defendants a deed to the apartment house property and a bill of sale for its furnishings, and that if they should fail to do so the court's decree should operate for that purpose. It conferred upon the defendants authority to borrow upon the security of the apartment house property enough to pay the plaintiff $3,000 and discharge the taxes and administrative expenses.

The above will have to suffice as a review of the very extensive record before us. The record, extensive as it is, contains no stenographic report of the proceedings which occurred when any of the attacked orders were signed.

██ The plaintiff contends that the probate court erred when it dismissed his petition for a declaratory judgment. His petition is unduly lengthy and it would be extraordinary if 21 phases of the proceeding required declaratory judgments to render them understandable. Some of the sub-divisions of the prayer ask the court to review and reverse its previous orders, thus seeking to employ the proceeding as a sort of an appeal. A declaratory judgment proceeding certainly cannot be employed for that purpose. Section 2-1406, Oregon Code 1930, which is section 6 of the Uniform Declaratory Judgment Act, provides:

"The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."

We have carefully read the numerous petitions, orders and reports which constitute the probate record.

In our opinion, the court pursued a consistent course. It promptly set aside to the plaintiff, as widower, a homestead interest in the apartment house property, together with all of the personal property which could be deemed exempt; thus excluding these items from the course of administration. It is true that it did not partition the apartment house property when it set aside to the plaintiff a homestead interest therein, but, according to the records, the plaintiff repeatedly refused tenders of $3,000 for his homestead interest. Likewise, he repeatedly stated that he would not sign a deed nor consent to a mortgage; thus rendering it virtually impossible for the defendants to convert his interest in the property into cash. We cannot understand how the situation would have been improved had the court entertained the declaratory judgment proceedings terminating in the entry of another order, which, of necessity, would have been extremely long. We are satisfied that the court did not abuse the discretionary power conferred upon it by the above-cited section of our code when it dismissed the petition.

■ The plaintiff contends that the decree entered July 7, 1936, above reviewed, is not supported by any pleadings. Section 11-101, Oregon Code 1930, states:

"There are no particular pleadings or forms thereof in the county court, when exercising the jurisdiction of probate matters * * * other than as provided in this title * * *. The court exercises its powers by means of - (1) A citation to the party; (2) An affidavit or the verified petition or statement of a party; * * * (4) Orders and decrees; * * *"

We believe that the petitions and alleged stipulations of the parties above reviewed constitute a sufficient foundation for the attacked decree.

Plaintiff's counsel state that they did not enter into the stipulations which are recited in the findings and the decree above quoted. It will be observed that the findings of fact signed by the probate judge are preceded by a recital of these alleged stipulations and that they are repeated in the decree of July 7, 1936. It will also be observed from the statements contained in these documents that the stipulations were effected in the courtroom and in the presence of the probate judge. We have mentioned the objections which the plaintiff filed to the proposed findings and the findings of fact which he tendered. The decree, referring to the objections and the plaintiff's proposed findings of fact, states that they were never "noted down for hearing". If the plaintiff believed that the recital of the stipulations in the proposed findings prepared by the defendants, and which the latter intended to tender to the probate judge for his signature, was erroneous, he should have insisted that the judge consider his objections and should not have contented himself with merely filing them. Further, if plaintiff's counsel proposed to contend in this court that they had not entered into these stipulations they should have brought before us, in the manner required by law, a stenographic transcript of the proceedings which occurred at the time the purported stipulations were effected. If a reporter was not present section 2-702, Oregon Code 1930, outlines a course of procedure for proving what occurred at the hearing. During the course of the argument before this court the defendants' counsel produced what he described as a transcript of the proceedings conducted in the probate court on July 7, 1936, and declared that the transcript bore the signature of the official court reporter. Plaintiff's counsel, being confronted with this statement and document, did not claim that a

reporter was not present when the proceedings culminating in the signing of the findings of fact and decree took place. In the absence of any showing whatever that the recital of the alleged stipulations is erroneous, we are not at liberty to accept as proof the plaintiff's statement that he did not stipulate, but must believe that the stipulations above quoted were entered into. This contention of plaintiff's counsel is, therefore, found to be without merit.

■ We come now to the determination of the value of the plaintiff's interest in the apartment house property and its furnishings. The stipulation of the parties agreed that the value should be determined upon an assumption that the property was worth $9,500, not $9,500 less a commission. Therefore, the figure $3,250 should have been used instead of $3,012.50 as the basis for determining the value of the plaintiff's curtesy right. Using four per cent and a life expectancy of 7.21699, both being employed in the probate court's findings, we ascertain a value of $938.21 for the curtesy right instead of $869.65. We approve of the apportionment of $604.56 taxes against the homestead interest, but add that any taxes which have accrued during the course of the appeal should be apportioned against the homestead in the same manner in which this apportionment was made. We do not believe that the plaintiff should be charged with any rent. Clearly, he cannot be liable for both rent and taxes. By reverting to our previous decision (*Moody v. Baker*, supra,) it will be observed that at the time of decedent's death husband and wife were occupying a six-room apartment. For many months following the death the plaintiff used a one-room apartment, and later, after remarrying, took possession of four rooms. He surely was entitled to a home in the structure. We are not

satisfied that the defendants ever intended to charge him any rent, and it is clear that they do not intend to pay any rent themselves, although they are occupying one-half of the first floor of the building. In explanation of the defendants' failure to pay rent, their brief states: "All of these parties are without cash or means with which to pay rent." The defendants, besides occupying the apartments without making rental payment, have also availed themselves until recently of substantial salaries at the expense of the estate. It is our belief that it was never contemplated that either the plaintiff or the defendants should be charged rent. Making the above adjustments, it appears that the estate owes the plaintiff not only for his $3,000 homestead interest, should it desire to acquire the same, but also $708.65 for his curtesy interest and exempt property over and above the sums that he owes as his part of the unpaid taxes.

■ We have not overlooked the plaintiff's contention that the furnishings of the apartment house were "the tools, implements, apparatus" etc. with which the deceased had earned her living and that, therefore, by virtue of § 3-207, subd. 3, Oregon Code 1930, they were, to the extent of $400, exempt property to which the plaintiff is entitled. As stated in a preceding paragraph, the probate department, in an order signed October 4, 1935, rejected an application by the plaintiff to the above effect. He prosecuted no appeal. It is now too late to present that contention before us.

■ Nor have we overlooked the plaintiff's contention that § 11-632, Oregon Code 1930, does not confer authority upon an estate's representative to borrow money with which to discharge a homestead interest; but the power, if missing, was conferred by stipulation.

We have considered carefully all other contentions advanced by the parties, but believe that the above suffices to dispose of the issues which have been presented.

The decree of the circuit court is modified to the above extent. In all other respects it is affirmed. Costs and disbursements will be allowed to neither party.

BEAN, C. J., and BAILEY, RAND, CAMPBELL, KELLY and BELT, JJ., concur.