Argued January 18, affirmed as modified July 12, petition for rehearing denied August 1, 1961

# FRY *v.* ASHLEY
## 363 P. 2d 555

*Al J. Laue*, Salem, argued the cause for appellant. On the brief were Williams & Skopil, Salem, and J. Wallace Gutzler, Woodburn.

*Asa L. Lewelling,* Salem, argued the cause for respondent. On the brief were Lewelling & Gies, Salem.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

WARNER, J.

On February 14, 1959, plaintiff and defendant entered into a written partnership agreement for the operation of an automobile body repair and garage business in Woodburn, Oregon, known as Ashley's Safety Service, in which they were to be equal owners. For approximately five years prior to that time Ashley had operated the same business as sole proprietor.

In October, 1959, plaintiff instituted this suit, wherein he sought a dissolution of the partnership, an accounting and the appointment of a receiver. Otto J. Halter was appointed as receiver on December 29, 1959, and subsequently, pursuant to stipulation of the parties, the receiver sold the assets at public auction and paid the partnership bills. After the receiver had filed his account and report a trial was had on the issues framed by the pleadings and the objections made by plaintiff to the receiver's accounting. From a decree favorable to plaintiff, Fry, defendant, Ashley, appeals.

We summarize defendant's assignments of error as follows:

1. Denial to defendant of compensation for his services in winding up the partnership affairs subsequent to September 15, 1959;

2. The holding that $335.93 received by Ashley for repair of the Wantz automobile were moneys of the partnership;

3. The holding that no additional sum of money was due from plaintiff to defendant as the balance due on the purchase price of plaintiff's one-half interest in the partnership;

4. The court's failure to charge the amount of $650 to plaintiff for the services of the accountants, Windedahl & Caldwell, instead of making it a partnership expense; and

5. The court's action in charging the partnership instead of plaintiff the sum of $750 for receiver's and attorney's fees.

We deem it of importance to note at the outset that shortly before the beginning of the trial the parties stipulated in open court that the partnership had been voluntarily dissolved as of September 17, 1959. This voluntary dissolution is a circumstance which bears upon some of our after conclusions and tempers the force of some of appellant's argument. We believe that paragraph 10 of the partnership agreement, providing for a dissolution of the partnership, as well as the language of the stipulation referred to, warrants the conclusion that the term "voluntary dissolutionment [sic]" as used in the stipulation and its equivalent words as employed in the partnership agreement meant a dissolution by the mutual agreement of both partners.

As we read defendant's argument assailing the court's failure to grant him compensation for services in winding up the partnership, we understand that he is seeking an allowance in addition to the drawing

account which he enjoyed subsequent to the dissolution date.

Paragraph 5 of the articles of partnership provided a drawing account of $100 per week for each partner. Ashley from and after September 17, 1959, drew $1,900 for 10 weeks of labor, i.e., up to January 30, 1960, in the winding up of the business. Fry did not draw any money from the partnership during that time, although he rendered some minor services during the same period.

■ Defendant recognizes the general rule that the remaining partner, in the absence of an agreement to the contrary, is not entitled to compensation for his services in winding up the business. See ORS 68.310(6) (Section 18 of the Uniform Partnership Act) which is a statutory embodiment of the foregoing common-law rule. See, also, *United Brokers Co. v. Dose,* 143 Or 283, 285, 22 P2d 204; *Duncan v. Bartle,* 188 Or 451, 482, 216 P2d 1005. But, as defendant points out, there is no provision in the articles upon which he can justify this claim for additional compensation. He seeks, however, to circumvent this by arguing that he falls within an exception which "operates where one member of a firm, by his voluntary act, dissolved the partnership." We recognize the exception but find it inapplicable here because, as we have above noticed, the instant dissolution was by common consent of the parties.

We find no merit in defendant's first assignment of error.

Referring to the charges accruing in the amount of $335.93 by reason of repairs to the automobile of one Wantz, we find ourselves confronted with a close question of fact. The Wantz car was returned to

the owner fully repaired on February 16, 1959. The partnership was formed February 14, 1959. Fry contends that the proceeds from this work belong to the partnership, which, if true, means that it was delivered for repair work on or after February 14. It is Ashley's position it was received by him before February 14 and, therefore, the money paid on that account belongs to him.

In addition to the testimony of the parties, we have the testimony of the car owner, Wantz, and Hair, an employee at the garage both before and after the parties entered into their partnership agreement. All were vague or uncertain in their recollections as to when the repair work began.

We note that no one attempted to testify to the character of the damage to Mr. Wantz's car or offered any data from whence a determination might be made of what might be the reasonable length of time required to complete the $335.93 job. We mention this because the testimony indicates a written estimate of the cost of the work was first made based upon the survey of damage made by Mr. Hair and Mr. Ashley. This estimate was then supplied to Mr. Wantz, ostensibly for the information of himself and his insurance carrier, with a copy retained in the garage office file. If itemized it might have been of some real value in establishing the time element for the work.

■ Based on a reading of the record alone, we find it difficult to come to a firm conclusion as to the merits of the respective claims of the parties. It, therefore, presents a situation where we must defer to the judgment of the trial judge who had the additional opportunity to see and hear the witnesses as they testified (*Reeves v. Dickenson*, 208 Or 360, 364, 300

P2d 458, and cases there cited) and abide by his judgment, which we do.

As previously indicated, defendant's third assignment relates to the claim of Ashley that Fry owes him a balance of $575 under their partnership agreement.

The articles of partnership were drawn by an attorney who was not one of counsel for either party at the time of trial. He completed and delivered them sometime during the latter part of December, 1958, or the forepart of January, 1959, in contemplation of their execution sometime during that month. As so prepared Fry obligated himself to pay Ashley $5,750 for a one-half interest in the firm. Fry experienced some delay in raising funds necessary to complete his part of the agreement. This detail was not accomplished until February 14, 1959, when both parties signed the articles of partnership in a Woodburn bank and without any change in the terms as originally drafted. At the same time and place Fry handed Ashley $5,175, an amount $575 less than the stipulated price for his share of the partnership assets. It is the court's holding with reference to the disposition of this amount that Ashley asserts error.

It is plaintiff's contention that between the drawing of the articles of partnership in early January, 1959, and their execution on February 14, 1959, Ashley had disposed of certain assets of the prospective partnership which in effect reduced the value of his investment by $575, and that defendant's acceptance of the lesser amount of $5,175 on February fourteenth reflected their mutual agreement that plaintiff's contribution to the partnership should be so reduced and no further payments would be required of him.

Defendant admits the sales to which plaintiff refers,

concedes that the originally planned contribution of Fry as a partner was reduced because of this, but represents the figure of $5,750 provided in the articles as originally drawn reflects this discount from the originally planned figure that Fry was to pay for his one-half interest. Ashley, therefore, argues Fry continues to owe him a balance of $575.

For the reasons which follow we find it unnecessary to formulate a conclusion as to the merits of these conflicting claims of the parties.

Fry in reply to defendant's answer alleging non-payment of all the purchase price for plaintiff's partnership interest entered only a general denial to Ashley's claim. He did not allege a mutual mistake as to the stipulated amount of $5,750 nor did he seek to have the partnership articles reformed to recite the amount of $5,175 as the true measure of his obligation to Ashley.

Notwithstanding the absence of a pleading setting up the claim of Fry as to reduction in the purchase price or a prayer for reformation, both plaintiff and defendant gave oral testimony in support of their respective contentions concerning the alleged balance of $575 due without objections made by either party to the admission of oral testimony tendered by the other as bearing upon that issue.

To sustain his third assignment Ashley asserts, and we think correctly, that the parol evidence given by Fry does violence to the parol evidence rule (ORS 41.740) inhibiting the reception or consideration of such testimony as tending to vary the terms of a written instrument except where a mistake or imperfection of the writing is put in issue by the pleadings. Nor is the party seeking a modification of the writing

through the avenue of oral evidence exonerated from the application of the rule by the failure of his adversary to object to its admission as evidence merely because it has probative value. *Taylor v. Wells,* 188 Or 648, 659, 217 P2d 236, and cases there cited. See, also, 20 Am Jur 963, Evidence § 1100; 32 CJS 787, Evidence § 851.

So far as the instant partnership agreement is concerned, it appears on its face complete. No issue having been made respecting its validity or claim that it embodied a mistake or imperfection, it must be considered as containing all the terms of the agreement resulting from the negotiations of the parties had prior to its execution on February 14, 1959.

Just why the trial proceeded without objection to the taking of oral testimony offered to modify its terms with respect to the amount Mr. Fry was required to pay for his partnership interest we do not know, unless there was a waiver of the rule by both parties.

In that connection we observe the following recital of finding in the decree:

"And it further appearing that one of the issues raised by the parties was the question of whether or not plaintiff should pay unto defendant an additional $575 for a half interest in the assets originally owned by defendant which became partnership assets and *it was stipulated* by the parties that the court could hear and consider the evidence on that issue and determine the same and the court having found that plaintiff paid unto defendant the sum of $5,125 [sic] although the partnership agreement called for $5,750 and that by mutual agreement of the parties the contract was modified because of work in progress credited to defendant between the time the contract was drawn and the time it was executed and that plaintiff does not

owe any additional sums unto defendant over and above the said sum of $5,125 [sic] paid." (Emphasis supplied.)

Assuming without deciding that a stipulation of the parties would effectively waive the application of the parol evidence rule and thus warranted the court in making its finding predicated solely on oral testimony, we have searched the record in vain for the stipulation referred to in the decree. We also note that neither party made any reference to a stipulation of that character in their respective briefs and arguments.

■ It is settled law that the relief granted must be responsive to and in conformity with the pleadings and proof. *Bingham v. Weber and Linn,* 197 Or 501, 511, 254 P2d 219; *Wiley Co. v. Home Indemnity Co.,* 213 Or 493, 497, 326 P2d 123; *Maeder Steel Products Co. v. Zanello,* 109 Or 562, 572, 220 P 155, and a recital in a decree which is contradicted by the record upon which the decree is based must give way to the record. See 49 CJS 875, Judgments § 443.

*Re Estate of Stewart,* 110 Or 408, 412, 223 P 727, involved a collateral attack on a decree of divorce, the findings in which recited that the district attorney of Columbia county had accepted service of the summons and complaint. The record, i.e., the papers in what is now called "the trial court file," showed that the district attorney had accepted service of the complaint only, and this court held that the record was controlling over the recital, and, therefore, that that court never acquired jurisdiction of the subject matter of the suit for divorce. We pointed out, however, that if the record in the suit for divorce had been silent the recitals in the findings would have been conclusive. This is because of the presumption in favor of a

decree of a court of general jurisdiction. Here the record, that it to say the reporter's transcript, is silent as to the purported stipulation and the question is whether in that posture of the case, on an appeal from a judgment or decree, the recital is to be given precedence over the transcript.

It may be useful to refer briefly to the procedure before the adoption of the new appellate code in 1959.

Under that procedure, on an appeal from a judgment in a law action, the trial court's certificate to the bill of exceptions was controlling as against the transcript of testimony of the official reporter. *Johnson v. Ladd,* 144 Or 268, 14 P2d 280, 24 P2d 17, and cases there cited. See, also, *Frangos v. Edmunds,* 179 Or 577, 602, 173 P2d 596; *Karberg v. Leahy,* 144 Or 687, 690, 26 P2d 56; *Latourette v. Miller,* 67 Or 141, 147, 135 P 327. Disputes over the correctness of a tendered bill of exceptions could be settled only in the trial court which retained jurisdiction for that purpose even up to the time of the disposition of the cause by this court. *State ex rel. United Railways Co. v. Ekwall,* 135 Or 439, 443, 296 P 57. The statute prescribing the procedure for settling such disputes, and which is still in effect, ORS 17.505-17.515, was construed in the *Ekwall* case, 135 Or at 444.

■ It is elementary that it is the circuit court, not this court, which determines the correctness of the transcript which comes to this court on an appeal. Omissions cannot be supplied or corrections made by affidavit filed originally in this court or by statements of counsel in the brief, as has recently been attempted in other cases.

On the equity side, the procedure was quite different. There was no such thing as a bill of exceptions

in an equity suit, just as there is none now either at law or in equity. ORS 19.114. Except when the testimony was taken by a referee (see ORS 45.050) the only authentication of the testimony required was that of the official court reporter. *Tallmadge v. Hooper,* 37 Or 503, 510, 61 P 349, 1127. See, also, *Hall v. Pettibone,* 182 Or 334, 337, 187 P2d 166; *Nealan v. Ring,* 98 Or 490, 496, 184 P 275, 193 P 199, 747. In the case of *In re Baker's Estate,* 156 Or 256, 271, 67 P2d 185, it was held that the statutory procedure for settling disputes concerning the transcript was applicable to suits in equity. It was necessary, as it still is, to bring up the entire transcript of testimony and all the exhibits in order to enable this court to try the case de novo in accordance with the provisions of the statute. ORS 17.440. For obvious reasons a trial de novo cannot be had without all the evidence which was considered by the trial court; otherwise this court would not be "reviewing the identical case which the trial court decided." *Rea v. Rea,* 195 Or 252, 262, 245 P2d 884, 35 ALR 612. See, also, *Beelman v. Beelman,* 72 Adv Sh 1009, 1010, 227 Or 556, 361 P2d 663.

Turning now to the present code of appellate procedure, it is provided that the transcript, i.e., the transcript of the court reporter's report which has been designated to be included in the record, as provided in ORS 19.074, "shall be certified by the reporter or the trial judge and shall be filed by the appellant with the clerk within 30 days after the filing of the notice of appeal" and that "the appellant shall serve the respondent with a copy of the transcript." ORS 19.078(1). In subsection (3) of the same section, it is provided that any party may move the court to correct errors appearing in the transcript or to have additional parts of the proceedings included therein

and the trial court is directed to make appropriate corrections and additions. Subsection (4) reads:

"Promptly after the expiration of 10 days after the filing of the transcript, or the denial of a motion to correct or add to the transcript, or upon the making of such corrections or additions as may be ordered, whichever last occurs, the appellant shall, and any other party may, make application to the trial court for an order settling the transcript. The trial court shall enter such order and the clerk shall send a copy thereof to the Clerk of the Supreme Court, at Salem."

█ These provisions apply alike to actions at law and suits in equity and, in our opinion, the order of the court settling the transcript is intended to be conclusive of all questions relating to the accuracy and completeness of that document and is entitled to the same "absolute verity," *Henrichsen v. Smith,* 29 Or 475, 482, 43 P 486, 44 P 496, as the certificate of the judge to the bill of exceptions under the former practice. The official court reporter has certified that the transcript "is a full, true and correct transcript of all proceedings had and testimony taken in the before-mentioned cause," and the court has entered an order settling the transcript. Under ORS 8.360(1) the report of the reporter when so certified is "prima facie a correct statement" of all the proceedings in the case. It becomes conclusive when the transcript is settled by the court. If the stipulation referred to was entered into during the trial, but not taken down by the reporter, and the appellant wished to rely upon it here, he could and should have moved the trial court to have it "included in the transcript" as "additional parts of the proceedings," ORS 19.078(3), and, if necessary, should have established the fact by the method provided by statute. *In re Baker's Estate,* supra.

■ A recital in a decree or judgment respecting the proceedings on the trial, like a finding of fact, must derive its efficacy from the transcript. If it is without support there, it should be disregarded.

■ Under the circumstances we conclude that no stipulation of the character recited in the decree, supra, was ever made and the trial court was, therefore, without authority to ignore the mandate of ORS 41.740, notwithstanding the absence of objections by the parties. *Taylor v. Wells,* supra.

Therefore, that part of the decree declaring that no additional amount is due from plaintiff to defendant on account of plaintiff's purchase of a one-half interest in the partnership must be stricken and, in lieu thereof, defendant given judgment against plaintiff for $575.

We now turn to consider defendant's fourth and fifth assignments. Here we find he seeks to surcharge the interest of Fry with the expense of the accounting and the fees allowed to the receiver and his attorneys. He raises no objection to the reasonableness of these amounts which the court allocated as partnership expense.

Shortly after the date of dissolution, Fry on his own motion retained the services of Windedahl and Caldwell, a firm of certified public accountants, to audit the partnership books as of September 15, 1959. They made their report shortly after.

■ Defendant argues that a partner who incurs expense for an audit of the partnership books "in his own individual interest" should not charge such expense to the firm and particularly when, as stated by Ashley, that audit "was uncalled for." Here, however, we find that a copy of the audit had been given to defendant prior to the trial and apparently used

by him in the preparation of his case. No objection was made to its admission. We also take note of and give weight to the recital in the decree reading: "And it appearing that the parties have adopted the audit of Windedahl and Caldwell \* \* \* as accurately reflecting the capital accounts of the partners as of September 15, 1959."

An audit in some form is usually necessary incidental to a partnership dissolution. Here, there were two justifying reasons for retaining accountants in the first instance. First, in the division of partnership duties, Mr. Fry's work was to a large degree on the outside of the shop and the financial records of the firm's operations were kept by bookkeepers under Mr. Ashley's direction. Secondly, as indicated by the accountants' report: "An accurate Income Statement and Balance Sheet cannot be prepared due to inadequate records."

The use made of this exhibit, as well as the necessity for some basis for an accounting between the parties, in our opinion justifies that the cost of the audit be made an item of partnership expense incidental to the dissolution.

 A receiver is an officer of the court appointing him and subject at all times to its directions and orders. *Weber v. Empire Holding Corp.,* 149 Or 503, 508, 41 P2d 1084. The nature of his duties frequently dictates the necessity for the appointment of legal counsel to assist him. Appellant does not challenge the need for such legal aid in this matter. The record here of the work done by Mr. Halter well justifies his appointment and the allowances made for him and his attorneys.

The decree of the trial court is affirmed as modified. Each party will pay his own costs.