Loren GAJEWSKI and Mervin A. Gajewski, Plaintiffs/Appellants,

v.

Lyle D. BRATCHER et al., Defendants/Appellees.

Civ. No. 8886.

Supreme Court of North Dakota.

June 27, 1974.

Rehearing Denied Aug. 26, 1974.

Loren Gajewski and Mervin A. Gajewski, pro se.

Bjella & Jestrab, Williston, for defendants and appellees.

C. F. KELSCH, District Judge.

This is an appeal by the plaintiffs from two judgments dismissing their action to determine adverse claims against all of the defendants and quieting the title of the defendants Lyle D. Bratcher and Sharon Bratcher ·to the premises involved therein. The plaintiffs' amended complaint contains five separate and distinct causes of action. The first cause, and the only one which was tried upon the merits in the district court, was brought to determine adverse claims to the Southwest Quarter of Section 12, Township 151 North, Range 102, situated in McKenzie County of this State.

The defendants Lyle Bratcher and Sharon Bratcher for their answer, in addition to a general denial, have set forth four affirmative defenses and a cross-claim wherein they allege, in effect:

(1) That the quitclaim deed upon which the plaintiffs base their claim of ownership is null and void because the names of the grantees were left in blank at the time it was delivered;

(2) That said deed was given as security only for the repayment of a loan in the sum of $4,000.00, plus the sum of $200.00 a year for the payment of taxes and repair of buildings, payable at the end of a five-year period, or a total of $5,000.00;

(3) That they tendered a draft to the plaintiffs in the sum of $5,000.00 in full payment of said debt and the discharge of the lien created thereby; and

(4) That they were the owners in fee simple of said premises under warranty

deed dated November 25, 1966, which was filed for record and duly recorded in the office of the register of deeds of Mc-Kenzie County, wherein the land is situated.

The plaintiffs' first cause of action was tried to the court without a jury. The trial began on June 19, 1968, and after a short continuance was completed on August 20, thereafter, whereupon the court took the case under advisement, and that on the 18th day of April, 1972, or more than three years and seven months thereafter, the trial judge, without the benefit of a transcript, signed two separate sets of findings of fact, conclusions of law and orders for judgment, apparently prepared by the attorneys for the defendants. In the first order he dismissed the plaintiffs' first cause of action against Edward Bratcher upon the merits with prejudice and without costs; and in the second, he dismissed the plaintiffs' action against the defendants Lyle and Sharon Bratcher upon the merits with prejudice, and further found and held, in effect: that the defendants Lyle and Sharon Bratcher were the owners in fee simple of the lands in issue as evidenced by warranty deed given to them by Glenna Gajewski which had been duly recorded, and ordered that their fee simple title to said premises be quieted against all of the adverse rights, interests and estates of the plaintiffs thereto.

Judgments were entered accordingly on the 4th day of August, 1972, and notice of entry thereof was served by certified mail upon the plaintiffs on the 9th day of August thereafter, from which said judgments the plaintiffs have perfected an appeal to this court within the time and manner provided by law.

At the outset we are confronted with defendants' motion to dismiss these appeals, or in the alternative to limit our review only to errors of law appearing on the face of the judgment roll, on the grounds:

(1) That no specifications of error of law or of the insufficiency of the evidence were served with the notice of appeal, as required by § 28–18–09, N.D.C.C.; and

(2) That no demand for a review of all of the evidence was made in the notice of appeal.

We find, from an examination of the record:

(1) That the notice of appeal was served and filed on the 26th day of September, 1972;

(2) That no specifications of errors of law complained of or insufficiency of the evidence were served with the notice of appeal, as required by Section 28–18–09, N.D.C.C.; and

(3) That the appellants did serve and file specifications of error and insufficiency of the evidence, which were incorporated by the district court in the settled statement of the case and certified to us upon appeal.

Upon this record we observe:

(1) That the Legislative Assembly repealed Section 28–27–32, N.D.C.C., which abolished the right to trial de novo in the supreme court in an action triable to the court without a jury. Chapter 311, S.L. 1971; and

(2) That after the repeal of said statute we amended Rule 52(a) of the Rules of Civil Procedure, which became effective August 1, 1971, so as to provide, insofar as it is here pertinent: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■ We conclude, therefore, that since this appeal was taken subsequent to the effective date of said Rule, that Rule 52(a) applies to and governs the right of the parties upon this appeal. Kee v. Redlin, 203 N.W.2d 423 (N.D.1973); Trengen v. Mongeon, 200 N.W.2d 50 (N.D.1972).

■ We are satisfied, therefore, that where, as here, specifications of errors of

law and of the insufficiency of the evidence were served, filed and incorporated in the settled statement of the case and certified to us upon appeal, that this record constitutes substantial compliance with the remedial requirements of our statute and that the defect in question is cured thereby.

It follows, therefore, that the defendants' motion for dismissal of this appeal, or in the alternative to limit our review to the errors of law appearing on the face of the judgment roll, must be and the same is hereby denied.

■ Before we reach the merits of the plaintiffs' cause of action against Lyle D. Bratcher and his wife, Sharon Bratcher, we deem it advisable to consider and to decide the plaintiffs' appeal from the judgment of the district court entered in the office of the clerk of court of McKenzie County on the 4th day of August, 1972, dismissing their action against Edward Bratcher upon the merits with prejudice and without costs. The trial court found, in substance, that the plaintiffs not only failed to prove that said defendant ever had or claimed any right, title to or interest or estate in the premises in issue but, on the contrary, that he expressly disclaimed any interest whatsoever therein. We find from a review of the record that the trial court's findings of fact are not clearly erroneous and that its conclusions of law are correct, and, therefore, its judgment dismissing the plaintiffs' action against Edward Bratcher with prejudice and without costs must be and the same is hereby affirmed.

We now reach the merits of this action against the two remaining defendants. We find from an examination of the record that the evidence is voluminous and the exhibits are too many to justify a detailed review of all of the testimony of the witnesses and the contents of the exhibits. Therefore a brief and concise statement of the relevant facts established by the clear weight of the evidence on each issue must suffice.

An analysis of the evidence and a consideration of all the exhibits in evidence demonstrate that there is a sharp and irreconcilable conflict in the version of facts testified to by the plaintiffs and that testified to by Glenna and Lloyd Gajewski, the two principal witnesses of said defendants.

We will review the evidence in the light of the clearly erroneous rule contained in Rule 52(a), N.D.R.Civ.P.

The plaintiffs, to establish their ownership of the land involved herein and their right to have their title thereto quieted in them, testified in substance:

(1) That Glenna Gajewski and her son Lloyd inherited the fee simple title to the real property in question by the final decree of distribution entered in her husband's estate by the county court of McKenzie County on the 25th day of March, 1960;

(2) That prior to December 6th, 1961, after some preliminary negotiations, the plaintiffs entered into an agreement with Glenna and Lloyd Gajewski for the purchase of said premises for the sum of $6,000, the sum of $4,000 to be paid in cash upon delivery of a deed, and the balance of $2,000 to be paid upon the delivery of a recordable warranty deed with an abstract of title showing that they had a clear title to said premises;

(3) That on or about the 1st day of December, 1961, the plaintiffs, accompanied by Glenna and Lloyd Gajewski, went to Williston to employ an attorney to prepare the necessary deed for said purpose;

(4) That upon their arrival at Williston, Glenna and Lloyd retained attorney Dean Winkjer to prepare, execute and acknowledge a warranty deed to the premises in issue while the plaintiffs remained in their automobile;

(5) That upon their return to the plaintiffs' car, Glenna handed a warranty deed to Loren Gajewski, duly signed and acknowledged before said attorney as notary

public, conveying the premises in issue to them, which they refused to accept because it was not signed by Nola M. Gajewski, Lloyd's wife, whom they believed might have a homestead equity therein;

(6) That after the refusal of the acceptance of the warranty deed, Glenna and her son Lloyd returned to the office of their attorney and requested him to prepare a quitclaim deed to the same premises with instructions to leave the names of the grantees in blank, pursuant to the request of the plaintiffs, and that upon the execution and acknowledgment of said quitclaim deed (plaintiffs' Exhibit 9), they delivered the same to the plaintiffs, which they accepted and had it duly recorded on the 10th day of January, 1967;

(7) That the quitclaim deed is in standard form and, insofar as is here material, provides that the grantors, for a good and valuable consideration "in hand paid by the parties of the second part, the receipt of which is hereby acknowledged, does by these presents BARGAIN, SELL, REMISE, RELEASE and QUITCLAIM unto the said parties of the second part, and to their heirs and assigns, FOREVER, all the right, title and interest in and to the following described lot, piece or parcel of land" (a description of the land follows);

(8) That thereafter the parties proceeded to the office of the Williston Cooperative Credit Union, whereupon the plaintiffs paid the sum of $4,000 in cash to the grantors from and out of which they paid the sum of $1,600 with interest due to the mortgagee upon their note and obtained a satisfaction of the real estate mortgage given to secure the payment thereof;

(9) That on the same day and as a part of the same transaction the plaintiffs prepared two memoranda which have been received in evidence as Exhibits 8 and 13. Exhibit 8 reads:

"We the undersigned, Glenna Gajewski and Lloyd Gajewski do hereby ac-

knowledge receipt of $4,000 four thousand dollars in legal tender in United States currency as payment in full for the original homestead of Reinhold Gajewski the husband and father respectively of the undersigned [followed by a description of the land], according to the terms of a quit claim deed dated December 1, 1961 and delivered this day to L. R. Gajewski and Mervin Gajewski. As a further consideration to this transaction the undersigned agree to furnish the current and complete abstract to aforesaid property to holders of said deed. It is further agreed that the undersigned will immediately pay any and all indebtedness of whatsoever nature and any and all taxes due through the year 1961 as a further consideration of above-mentioned payment and transaction."

Signed by Glenna Gajewski and Lloyd M. Gajewski. Dated the 6th day of December, 1961;

(10) That at the same time the plaintiffs executed and delivered Exhibit 13 to Glenna and Lloyd Gajewski, which reads:

"The undersigned L. R. Gajewski and Mervin Gajewski hereby do jointly and separately agree to pay to Glenna Gajewski and Lloyd Gajewski the sum of $2,000 two thousand dollars in United States legal tender at such time as the aforesaid Glenna Gajewski and Lloyd Gajewski make and deliver to aforesaid L. R. Gajewski and Mervin Gajewski a valid and recordable warranty deed to the following described lands: [then follows a description]. Aforesaid Warranty Deed shall show that ½ of all minerals shall be reserved to said Glenna Gajewski and Lloyd Gajewski."

Dated December ——, 1961;

(11) That the plaintiffs entered into the actual, open and peaceful possession of said premises in the Spring of 1962, except the residence located thereon which was temporarily retained by Glenna, and remained in continuous possession thereof,

farmed the same, and took all of the crops and forage grown thereon from 1962 to 1966, inclusive, and that neither Glenna nor Lloyd ever claimed, demanded or received any part or share of the crops raised on said premises during said period of time;

(12) That in 1962 the plaintiffs purchased, installed and paid about $1,000 for a steel grain bin which they placed upon a concrete foundation near the farm residence, and enlarged and improved a dike located thereon;

(13) That Glenna Gajewski paid all of the taxes for the years 1960 and 1961, as she promised to do pursuant to their agreement (Exhibit 8);

(14) That the plaintiffs paid all of the taxes levied and assessed against said premises for the years of 1962 to 1966, inclusive, as the owners thereof;

(15) That during the month of April 1965, Glenna Gajewski requested the agents in charge of the Federal conservation program at Williston to split the two farms into two separate units by excluding the Southeast Quarter of Section 6, which she also owned, from the Southwest Quarter of Section 12, because the plaintiffs did not want to participate in the farm conservation program; and that when she inquired of Edward and Lyle Bratcher as to what she should tell said agent they advised her to say "that it was a cash deal" and that is why the agent entered the notation, "a sale," as evidenced by plaintiffs' Exhibit 15;

(16) That Glenna Gajewski left the residence or farm home on said premises in the Spring of 1963 and moved to Edward Bratcher's home, then to Williston and later, on March 11, 1964, she moved to the farm residence of the plaintiffs where she and her mother lived with them until November 30, 1966, which was about five days after she had executed and delivered the warranty deed to Lyle Bratcher and his wife on the 25th day of November, 1966, when she left because the plaintiffs had accused her of working for Lyle Bratcher.

We will now set forth the material facts testified to by Glenna and her son Lloyd Gajewski on behalf of the defendants, which are clearly contrary to and inconsistent with the version of facts testified to by the plaintiffs. They testified in substance, without any objection, to the competency or admissibility thereof under the parol evidence rule, as follows:

(1) That they were indebted to the Williston Cooperative Credit Union in the sum of $1,600, which was evidenced by an installment note, $400 of which became due December 1, 1961, and the payment of which was secured by a real estate mortgage on the premises involved herein;

(2) That they did not have the money to pay said installment with interest and that they asked Loren if he would lend them some money so that they could pay the first installment, then due with other bills, which they then owed and wanted to pay at that time;

(3) That upon their request, Loren Gajewski promised to loan them the sum of $4,000 on the condition that they would give him a quitclaim deed to the premises in issue, and that pursuant to his demand they did sign, acknowledge and deliver a quitclaim deed to him on or about the 6th day of December, 1961;

(4) That both Glenna and Lloyd claimed that the plaintiffs prepared and signed another agreement by the terms of which Glenna and Lloyd were to pay the sum of $200 a year for taxes and repair of buildings, to be paid at the end of each year or at the end of a five-year period; that Glenna had possession of said agreement until 1966; that she placed it in a drawer of a dresser in the plaintiffs' home where she lived, that she had made a thorough search for it, but was unable to find it;

(5) That she left the home located upon the premises in issue in the Spring of

1963; and moved to Edward Bratcher's home and from there to the City of Williston, and thereafter in March 1964 she moved to the home of the plaintiffs where she and her mother lived with them until November 30, 1966;

(6) That Lloyd conveyed his undivided one-half interest in the premises in issue to his mother by quitclaim deed dated September 30, 1963, which was duly filed and duly recorded in the office of the register of deeds of McKenzie County;

(7) That on November 25, 1966, Lyle Bratcher came to the home of the plaintiffs and took Glenna to Williston and had his attorney prepare a warranty deed for Glenna to sign conveying the premises in issue to himself and his wife, which was received in evidence as defendants' Exhibit Z, and which was duly filed for record in the office of the register of deeds of McKenzie County on the 28th day of November, 1966, and was recorded in Book 114, page 63;

(8) That on the 30th day of November, 1966, Lloyd tendered a bank draft in the sum of $5,000 to the plaintiffs for the repayment of the so-called loan plus $200 a year for a period of five years, for a total of $5,000, and demanded a return of the quitclaim deed, and that the plaintiffs refused to accept such payment or to redeliver said deed.

We find that the plaintiffs (1) denied all of the facts testified to by Glenna and Lloyd Gajewski and (2) denied that there was another paper prepared and delivered by the terms of which Glenna and her son agreed to pay the sum of $200 a year for taxes and repair of buildings to be paid at the end of each year or at the end of a period of five years, and, on the contrary, insisted that Exhibits 8, 9 and 13 were the only written instruments that were executed and delivered with respect to said transaction.

An analysis of the findings of fact and conclusions of law made by the trial court show beyond a substantial doubt that the trial judge believed, found and concluded that a version of facts testified to by Glenna and Lloyd Gajewski were true, or at least more reasonable, probable and consistent with the documentary evidence and the conduct of the parties than the facts testified to by the plaintiffs, and consequently entitled to more weight and credence, and as such was sufficient to sustain their burden of proof.

The plaintiffs, however, argue very strenuously in effect that the trial court erred in making its findings of fact and conclusions of law, and that its error was highly prejudicial to their substantial legal rights.

To sustain their contention they have assigned a great number of specifications of error, some of which are duplicitous, others are irrelevant, and the remainder can be grouped and considered and decided under five specific issues which we shall state and decide separately.

The first issue is whether the oral testimony of Glenna and Lloyd Gajewski, received without proper and timely objection, was competent and admissible to prove that the quitclaim deed was given as security only, as the trial court obviously held, to secure the payment of a loan in the sum of $4,000, together with $200 a year for taxes and repair of buildings to be paid each year or at the end of a five-year period, and that upon the payment thereof the quitclaim deed was to be given back or returned to them, as the grantors thereof.

■ We are convinced that the oral testimony of Glenna and Lloyd Gajewski was incompetent and inadmissible to prove that the quitclaim deed was delivered only for the purpose of security, for three decisive reasons.

First, our statute provides, "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preced-

ed or accompanied the execution of the instrument." Section 9–06–07, N.D.C.C.

■■ Construing this statute, we held: "This is a legislative enactment, in part, of the parol evidence rule. * * * This is not an evidentiary or interpretive rule, but rather one of substantive law." Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606, 608 (1951).

■ We have held further, in effect, that the parol evidence rule applies where, as here (1) the parties have adopted a writing as a definite expression of their agreement; (2) that deeds are subject to the parol evidence rule; and (3) that fraud, mistake or accident, or any other matter constituting an avoidance or affirmative defense, must be specifically pleaded to make proof thereof admissible. Rules 8(c) and 9(b), North Dakota Rules of Civil Procedure; Sobolik v. Vavrowsky, 146 N.W.2d 761 (N.D.1966); City of Granville v. Kovash, Incorporated, 118 N. W.2d 354 (N.D.1962).

■ The parol evidence rule has been variously defined and has been best stated as follows:

" ' " 'Where parties, *without any fraud or mistake,* have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement:' * * * 'all preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract * * * and *"unless fraud, accident, or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol* evidence." ' " ' " Associated Hardware Supply Co. v. Big Wheel Distributing Company, 355 F.2d 114, 119 (3d Cir. 1966), 17 A.L.R.3d 998.

See also, 32A C.J.S. Evidence § 851; 30 Am.Jur.2d Evidence § 1017.

The parol evidence rule is founded on experience and public policy and created by necessity, and it is designed to give certainty to a transaction which has been reduced to writing by protecting the parties against the doubtful veracity and the uncertain memory of interested witnesses. Hanes v. Mitchell, *supra*; 32A C.J.S. Evidence § 851.

■ We have approved and applied this rule in the interpretation of § 9–06–07, N.D.C.C., and have held:

"Where a written contract is complete in itself, is clear and unambiguous in its language and contains mutual contractual covenants agreed upon, such parts cannot be changed by parol testimony, nor new terms added thereto, in the absence of a clear showing of fraud, mistake or accident." Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100 (1946).

See also, Bolyea v. First Presbyterian Church of Wilton, N.D., 196 N.W.2d 149 (N.D.1972); Zimmer v. Bellon, 153 N.W. 2d 757 (N.D.1967); Ives v. Hanson, 66 N. W.2d 802 (N.D.1954); Hanes v. Mitchell, *supra.*

■ Second, we are satisfied that the testimony of Glenna and Lloyd Gajewski to the effect that they delivered the quitclaim deed to the plaintiffs on the condition that it was to be returned to them upon the payment of the debt secured thereby is *equally incompetent and inadmissible* under the parol evidence rule because our statute declares:

"A grant cannot be delivered to the grantee conditionally. Delivery to him or to his agent as such is necessarily absolute and the instrument takes effect thereupon, discharged of any condition on which the delivery was made." Section 47–09–07, N.D.C.C.

■ Interpreting this section, we have held in Adams v. Little Missouri Minerals

Association, 143 N.W.2d 659 (N.D.1966), at syllabus paragraph 8:

"If the grantor makes a manual delivery to the grantee of a deed absolute in form, intending to part with all authority and dominion over the instrument, he makes an absolute delivery and title passes immediately in accordance with the terms of the deed notwithstanding any intention or understanding that its operation be delayed until the happening of a contingency."

The record shows without dispute that the quitclaim deed was freely and voluntarily delivered to the grantees and that the only question in dispute is whether it was to be redelivered upon the payment of the loan, as claimed by the grantors.

■■■ Third, there is another sound reason why the oral testimony of Glenna and Lloyd Gajewski is incompetent and inadmissible under the parol evidence rule and that is that the grant contained in the quitclaim deed is conclusive against the grantors and their privies. Kittelson v. Collette, 61 N.D. 768, 240 N.W. 920 (1932).

Our statute, § 47–10–08, N.D.C.C., declares:

"Every grant of an estate in real property is ˚conclusive against the grantor and every one subsequently claiming under him, except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that first is duly recorded."

The question arises whether the quitclaim deed in evidence contains a grant of an estate in real property which is conclusive against the grantors or their privies.

In *Bolyea, supra,* we found that the grantor had executed and delivered two quitclaim deeds to his stepdaughter Sandra which were not recorded but returned to the grantor. for safekeeping and which were later found to be lost, and the heirs of the grantor claimed that the quitclaim deeds

had since been destroyed and the property disposed of subsequently by will, we held, however, that the quitclaim deeds contained a grant which took effect so as to vest the interest intended to be transferred upon its delivery in the grantee.

We believe that the rule established in *Bolyea* is sound and consistent with the provisions of our statutes, that the quitclaim deed contains a grant which is conclusive against the grantors and their privies, and that by reason thereof Glenna and Lloyd Gajewski are precluded from repudiating their agreement and from denying its validity. 28 Am.Jur.2d, Estoppel and Waiver, § 10.

■■■ We approved and applied this rule in Silbernagel v. Silbernagel, 79 N.D. 275, 55 N.W.2d 713, 717 (1952), where we held, in part:

"Statements of a grantor made after the delivery of a deed are admissible in a suit to enforce title thereunder when such statements support the deed *but not when they are against it.*" [Emphasis added.]

■■■ Applying the principles of law set forth herein, we conclude and determine that the oral testimony of Glenna and Lloyd Gajewski involved in this issue was incompetent and inadmissible: (1) to vary, contradict and impeach the quitclaim deed they executed and delivered to the plaintiffs herein; (2) to prove that said deed was to be returned to them upon the repayment of said loan; and (3) to strike down and to nullify the grant contained in said deed which is conclusive against them, as grantors and their privies.

We now come to the second issue, which is both crucial and very difficult of decision, and that is whether the plaintiffs, by their failure to impose a proper and timely objection to the competency and admissibility of the oral testimony of Glenna and Lloyd Gajewski under the parol evidence rule, waived their right to assign the admission thereof as error for the first time

on appeal, and, if so, whether we have the right and the duty to consider all of the extrinsic evidence so received, without objection, as the trial court did, in the rendition of our decision upon the merits.

Counsel for the defendants contend strenuously, in effect:

(1) That the sharp conflict in the version of facts testified to by the witnesses presented a serious question as to their truth and veracity;

(2) That the trial court, as the trier of facts, had the unquestionable right to determine who to believe and who to disbelieve to ascertain where the truth lies;

(3) That the trial court believed and found that the version of facts testified to by the defendants' witnesses was true and correct; and

(4) That the trial court's findings are supported by ample, credible evidence, that its conclusions of law are sound, and, since its findings are not "clearly erroneous," they must be sustained and its judgment affirmed. Trengen v. Mongeon, 200 N. W.2d 50 (N.D.1973); In re Estate of Elmer, 210 N.W.2d 815 (N.D.1973).

An examination of the record shows without dispute:

(1) That the plaintiffs never objected to the admission of the oral testimony of Glenna and Lloyd Gajewski on the ground that it was incompetent and inadmissible under the parol evidence rule;

(2) That although the plaintiffs made some general motions to strike the entire testimony of some of the witnesses for the reason that it was unworthy of credence and belief, they never moved to strike the oral testimony so received without objection on the specific ground that it was incompetent and inadmissible under the parol evidence rule;

(3) That the transcript of the evidence and record of proceedings had upon the trial of the action do not contain any reference to or challenge of the competency and admissibility of extrinsic evidence under the parol evidence rule; and

(4) That the first reference to the provisions of § 6–06–07, N.D.C.C., or the parol evidence rule, appears for the first time in appellants' brief dated April 4, 1973.

Our statute, § 1–02–28, N.D.C.C., provides:

"Except when it is declared otherwise, the provisions of this code in respect to the rights and obligations of parties to contracts are subordinate to the intention of the parties . . .. The benefit thereof may be waived by any party entitled thereto, unless such waiver would be against public policy."

We have defined the term "waiver" as the voluntary and intentional relinquishment and abandonment of a known existing right, advantage, benefit, claim or privilege which, except for such waiver, the party would have enjoyed. Fish v. Berzel, 101 N.W.2d 548 (N.D.1960); Gipson v. First National Bank of Bismarck, 97 N.W.2d 671 (N.D.1959).

We have held in our prior decisions, in effect:

(1) That the doctrine of waiver is applicable to all rights and privileges to which a person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the constitution, provided such rights and privileges rest in the individual who has waived them and are intended for his benefit. Wellens v. Beck, 103 N.W.2d 281 (N.D.1960).

(2) That as a general rule an assignment of error in the admission of evidence will not be reviewed by this court unless proper and timely objection is made to the admissibility thereof, and the admissibility of such evidence cannot be challenged for the first time upon appeal. State v. Albers, 211 N.W.2d 524 (N.D.1973).

(3) That where the attorneys had stipulated facts which disclosed that the Wild-

rose bank was not legally designated as a depository of Divide County we said, among other things, "it is elementary that the parol evidence rule may be waived." Baird v. Divide County, 58 N.D. 867, 228 N.W. 226, decided December 10, 1929. And,

(4) That where testimony is properly received when timely objection is not made and there is no motion to strike such evidence it is properly received. In re J. Z., 190 N.W.2d 27 (N.D.1971).

Applying these principles of law, the question arises whether we have the right and duty to consider all of the intrinsic evidence received in violation of the parol evidence rule in our decision.

Our research reveals that there is a sharp conflict and substantial difference in the judicial decisions upon the question of the legal effect of the admission, without proper and timely objection, of oral or intrinsic evidence, incompetent and inadmissible under the parol evidence rule.

One line of authority, characterized as the "old rule," holds that, unless proper and timely objection is made to the incompetency or inadmissibility of intrinsic evidence in violation of the parol evidence rule, such error cannot be assigned or raised for the first time upon appeal.

The cases which support this rule are compiled in an annotation to the case of Higgs v. DeMaziroff, 263 N.Y. 473, 189 N.E. 555, in 92 A.L.R. 807.

The other line of authority, referred to as the "new rule" established by the "modern trend" of judicial decisions, holds, in effect, that since parol evidence is not a rule of evidence but of substantive law, the failure to make proper and timely objection to the admissibility of oral or intrinsic evidence does not render such evidence competent or admissible or entitle it to any probative force or value, and imposes a duty upon the appellate courts to disregard and to exclude such evidence from its consideration in the rendition of its decision in the absence of a claim or proof of fraud, mistake or accident. 32A C.J.S. Evidence § 851, p. 219; 30 Am.Jur.2d, Evidence, §§ 1017 and 1022; 88 C.J.S. Trial § 154, p. 301; Williston on Contracts (3d ed.) § 631; and 5 Am.Jur.2d, Appeal and Error, § 737.

We believe it to be appropriate and advisable to quote from some of the decisions to establish the rule recognized and approved by the "modern trend" of judicial authority.

(1) "Parol evidence, though admitted without objection, must be ignored as of no legal import, and its incompetency to vary a written contract is a matter of law." Pinsky v. Sloat, 130 Cal. App.2d 579, 279 P.2d 584, 590 (1955).

Smith v. Bear, 237 F.2d 79 (2d Cir. 1956).

(2) "The parol-evidence rule is not so much the rule of evidence as the rule of substantive law and requires the court to disregard such evidence even if it gets into the record without objection." Conrad Milwaukee Corporation v. Wasilewski, 30 Wis.2d 481, 141 N.W.2d 240, 244 (1966).

(3) "Since the parol evidence rule is a rule of substantive law as well as a rule of evidence [citations omitted] we conclude that the parol evidence in this case must be ignored as having no probative value even though it was admitted without objection." Thornton Construction Co. v. Mackinac Aggregates Corp., 9 Mich.App. 467, 157 N. W.2d 456, 458 (1968).

(4) "The parol evidence rule is not a rule of evidence, but is a rule of positive or substantive law founded upon the substantive rights of the parties. [Citations omitted.] Admission of testimony in violation of the parol evidence rule does not make the testimony competent, whether it is admitted without, or over, objection. Such evidence will be disregarded even though no objection is made thereto. [Citations

omitted.] . . . and an appellate court cannot consider such evidence or give it any weight." Farmers State Bank v. Keiser, 83 S.D. 354, 159 N.W. 2d 388, 390 (1968).

We find that, in addition to the decisions of the Supreme Courts of the states of California, Michigan, Wisconsin, and South Dakota, from which we quoted herein, there are another fourteen states that have recognized and approved the so-called modern rule. They are: Carey v. Shellburne, Inc., Del., 43 Del.Ch. 292, 224 A.2d 400 (1966); Waters v. Lanier, 116 Ga. App. 471, 157 S.E.2d 796 (1967); Williams v. Williams, 251 Iowa 260, 100 N.W.2d 185 (1959); O'Bryan v. Massey-Ferguson, Inc., 413 S.W.2d 891 (Ky.1966); Burrowes Corporation v. Read, 151 Me. 92, 116 A.2d 127 (1955); Sherman v. Koufman, 349 Mass. 606, 211 N.E.2d 220 (1965); Melton v. Ensley, 421 S.W.2d 44 (Mo.App.1967); Fry v. Ashley, 228 Or. 61, 363 P.2d 555 (Or.1961); Philip Carey Mfg. Co. v. General Products Co., 89 R.I. 136, 151 A.2d 487 (1959); Adams v. Marchbanks, 253 S. C. 280, 170 S.E.2d 214 (1969); Aetna Casualty & Surety Company v. Watson, 476 S.W.2d 868 (Tex.Civ.App.1972); Zehler v. E. L. Bruce Co., 208 Va. 796, 160 S.E.2d 786 (1968); Fleetham v. Schneekloth, 52 Wash.2d 176, 324 P.2d 429 (1958); North American Uranium, Inc. v. Johnston, 77 Wyo. 332, 316 P.2d 325 (1957).

We are convinced that the rule established by the modern trend of judicial authority is sound, reasonable and just, and is consistent with our prior decisions wherein we have held, in effect:

(1) That the public policy of this state is expressed in its Constitution and statutes. James v. Young, 77 N.D. 451, 43 N. W.2d 692 (1950).

(2) That § 9-06-07, N.D.C.C., constitutes a legislative enactment, in part, of the parol evidence rule, which is not an evidentiary or interpretive rule, but one of substantive law.

(3) That the parol evidence rule embodied in our statute declares that the written agreement of the parties is not only the best, but the only, evidence which courts are permitted to consider to ascertain the true intention of the parties. The reason for this rule is precisely stated in *Hanes, supra*, 49 N.W.2d 610, where we said:

"To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts. The purpose of the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible."

(4) That every contract is made with reference to and subject to existing law; and every law affecting the contract is read into and becomes a part of the contract. Shimek v. Vogel, 105 N.W.2d 677 (N.D.1960).

Considering these principles of law and rules of evidence, we conclude that the mere failure by the plaintiffs to object to the admission of intrinsic evidence that is incompetent under the parol evidence rule does not constitute the relinquishment of a known right or privilege by them. We think that the crucial question presented for decision is whether a substantial breach of the material terms and conditions of a written contract by a party thereto is prohibited by and against the public policy expressed in our statute.

We are convinced that the trial court erred in considering the evidence that was received in violation of the parol evidence rule and in the entry of an order directing the dismissal of plaintiffs' action with prejudice for two sound and practical reasons:

First, because the mere failure of the plaintiffs to object to the admission of

intrinsic evidence cannot render competent or admissible, or impart any probative value, to evidence which was incompetent and inadmissible in the first instance under the parol evidence rule embodied in and expressly prohibited by our statute, in the absence of any claim of fraud, mistake or accident; and

■ Second, because it is our plain duty to interpret the quitclaim deed involved herein in the light of the law in existence at the time of its execution and delivery, which must be read into and become an enforceable part thereof, and when so interpreted we find and determine that the parties thereto agreed:

(1) That their written contract expressed their true intention;

(2) That they would not adduce or rely upon extrinsic evidence to vary, contradict or impeach it, and having so agreed, they are bound thereby and cannot be permitted to repudiate or violate the material terms and conditions thereof.

Manifestly, to permit either of the parties to breach or to dishonor their written agreement would not only destroy the value of written contracts, but seriously undermine and impair the stability and security of titles to real property, evidenced by written instruments, and thereby defeat the very purpose of the parol evidence rule, nullify the legislative enactment thereof, and induce the commission of perjury. 92 A.L.R., p. 812.

For these reasons, we approve the rule established by the modern trend of judicial authority as an exception to the general rule that error in the admission of incompetent evidence must first be raised in and decided by the trial court before it can be assigned as prejudicial error upon appeal.

■ Consequently, we find and determine that we not only have the legal right, but the explicit duty, to disregard and to exclude from our consideration in the rendition of our decision all of the oral or intrinsic evidence, admitted without objection, in violation of the parol evidence rule.

This brings us to the third issue presented to us for decision, and that is whether the defendants, Lyle and Sharon Bratcher, acquired their pretended title to the land in question with actual or constructive notice that the grantor was not in actual possession of the premises and had not taken or received any rents or profits therefrom for a space of more than one year prior to the time they obtained their warranty deed thereto on the 25th day of November, 1966.

Before we consider the merits of this issue, we find it necessary to answer the contention of the defendants that the plaintiffs waived their right to assign error for the first time upon this appeal, as they have, because they have failed to object to the competency and admissibility of their warranty deed, when it was offered in evidence, upon the ground that it was champertous and void.

■ We find and conclude that this contention is unsound and devoid of merit for the reason that the record shows, without dispute, that the plaintiffs made a motion for summary judgment on January 25, 1968, before this case was tried upon the merits, and that although Loren Gajewski did not expressly refer to § 12–17–14, N. D.C.C., in his affidavit made in support thereof, he did state, among other things, "That Glenna Gajewski had no equity in said real property and had not been in possession thereof nor had taken any rents nor profits therefrom since December 6, 1961."

We are satisfied that their motion for summary judgment was clearly predicated upon the provisions of § 12–17–14, and, as such, was sufficient notice to apprise both counsel for the defendants and the trial court of their challenge of the validity of their warranty deed on the ground that it was champertous and void.

The trial court denied their motion and consequently the plaintiffs had a right to assign, as they did upon appeal, that the order of the trial court constituted prejudicial and reversible error.

We find that, in addition to the facts set out herein, Lyle Bratcher admitted under oath:

(1) That he was well acquainted with Glenna and Lloyd Gajewski, with the location of the premises in issue, and with the improvements located thereon;

(2) That he knew that the plaintiffs were in actual possession of said premises, with the exception of the residence located thereon, from the Spring of 1962 until the trial of the action;

(3) That he knew that the plaintiffs farmed the land under cultivation on said premises during the years 1962 to 1966, inclusive, and that they had taken all of the crops, rents and profits realized therefrom during said time;

(4) That he helped to harvest the crops raised upon said premises during the farm season in 1964 while the plaintiffs were confined to the United States Correctional Institute at Sandstone, Minnesota, and that he was paid by the plaintiffs for his services;

(5) That he knew that the plaintiffs purchased, installed and paid for a steel grain bin during the summer of 1962 and that they stored some of their crops therein;

(6) That he knew that Glenna Gajewski left the residence on said premises in the Spring of 1963, and that she never returned thereto prior to November 25, 1966, when he took her to Williston and had her execute and deliver the warranty deed here in issue to him;

(7) That he was informed by Glenna Gajewski at the time his warranty deed was prepared that she had given a quitclaim deed to the plaintiffs for the purpose of security only;

(8) That he filed said deed in the office of the register of deeds of McKenzie County on the 28th day of November, 1966, and had it duly recorded in Book 114, page 63.

These admissions, under oath, are binding and conclusive upon him, and warrant and justify three specific findings and conclusions.

First, that Lyle D. Bratcher had actual notice of circumstances sufficient to put him upon inquiry with respect to the right and interest of the plaintiffs, as occupants of said premises, that although he knew that the plaintiffs had been in open and actual possession of said premises for more than five years, he never inquired of either of the plaintiffs, when he came after Glenna at their home on November 25th, 1966, as to the nature of their right or title, and having failed to exercise reasonable diligence he must be deemed to have constructive notice that the plaintiffs were in possession of said premises under a quitclaim deed. Section 1–01–25, N.D.C.C.

The pertinent provision of our statute declares that "An unrecorded instrument is valid as between the parties thereto and those who have notice thereof." Section 47–19–46, N.D.C.C. Magnuson v. Breher, 69 N.D. 197, 284 N.W. 853 (1939).

Obviously our statute does not specify whether constructive notice is sufficient or whether actual notice is required, but in the interpretation of this statute we have specifically held, in effect, that actual knowledge of the open, notorious and peaceful possession of real property by one other than the grantor is sufficient to charge the purchaser thereof with knowledge of the rights of the occupant. Earnest v. First National Bank, 56 N.D. 309, 217 N.W. 169 (1927); Stark County v. Koch, 107 N.W.2d 701 (N.D.1961).

Second, that even if the aforesaid statute was construed to require actual notice that the plaintiffs were in possession under an unrecorded quitclaim deed, then we can,

nevertheless, confidently find and conclude that Lyle D. Bratcher had actual knowledge and notice thereof before his warranty deed was delivered to him. The record shows that upon inquiry by his attorney he testified:

> "Q. Well, did she (referring to Glenna) ever tell you that she had given Loren or Mervin Gajewski, or either one, a quitclaim deed to it?
>
> "A. I think that was brought up about the time the deed was made out. I think, if I remember right, she said that she had given him one for security on the borrowed money."

■ This answer constitutes an undeniable admission by Lyle D. Bratcher, who handled this transaction for both of the grantees, that he acquired actual knowledge and notice that Glenna had given a quitclaim deed to the plaintiffs during the time his warranty deed was being prepared and before it was executed and delivered to him, and therefore the plaintiffs' unrecorded quitclaim deed is valid against the grantees because they had actual notice thereof.

Third, we find and determine that the grantees obtained their warranty deed in violation of the inhibition contained in § 12–17–14, N.D.C.C., which declares:

> "Every person who buys * * * or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same * * * or have taken the rents and profits thereof, for the space of one year before such grant, conveyance, sale, promise, or covenant is made, is guilty of a misdemeanor."

■ Under this statute we have held, in effect:

(1) That deeds executed in violation of the provisions of this section prohibiting the conveyance of land held adversely to the grantors are void as to persons in adverse possession. Sailer v. Mercer County, 75 N.D. 123, 26 N.W.2d 137 (1947).

(2) That the statute prohibiting conveyances of land held adversely to the grantor renders void as against persons in adverse possession under a claim of title, conveyances by grantors who have not been in possession or taken rents and profits therefrom for the space of one year prior thereto. Section 12–17–14, N.D.C.C.; Knowlton v. Coye, 76 N.D. 478, 37 N.W.2d 343 (1949).

■ Applying the provisions of our statute, as we have construed it, we find and determine that the warranty deed which the defendants Lyle D. and Sharon Bratcher obtained from Glenna Gajewski on the 25th day of November, 1966, is champertous and void for the reason that the clear weight of the undisputed evidence shows:

(1) That the plaintiffs were in open, notorious, peaceful and adverse possession of the premises described in their warranty deed, for at least five years under a quitclaim deed, which constitutes color of title. Chapin v. Letcher, 93 N.W.2d 415 (N.D. 1958); Morrison v. Hawksett, 64 N.W.2d 786 (N.D.1954).

(2) That Glenna Gajewski, the grantor, was not in actual possession of said premises or any part thereof from the Spring of 1963 to November 25th, 1966, or a period of more than three years, before the grantees obtained their warranty deed.

(3) That Glenna Gajewski did not take or ever receive any of the rents and profits realized from said land from January 1962 to November 25th, 1966, inclusive, the same having admittedly been taken by the plaintiffs during all of said period of time; and

(4) That the defendants are not purchasers in good faith, as said terms are de-

fined by our statute. Section 1-01-21, N. D.C.C.; City of Bismarck v. Casey, 77 N. D. 295, 43 N.W.2d 372 (1950), notwithstanding the fact that their warranty deed was recorded first in time, because good faith implies absence of information which renders the transactions unconscientious. Although Lyle D. Bratcher, who handled this transaction for himself and his wife, claimed that he purchased said premises in reliance upon the public records of McKenzie County, the undisputed facts, supported by his admissions, show that he not only had constructive notice, but actual knowledge, of the rights of the plaintiffs as occupants .of said premises; that he made no inquiry of either of the plaintiffs with respect to their right or title, but that he purchased said land with the obvious intent to defeat and divest them of their title, to deprive them of their right of possession and to unjustly gain the benefits of the improvements they had made thereon.

█ It is well settled that courts have no power to declare or to hold a contract valid in equity that is null and void in law. Hedges v. Dixon County, 150 U.S. 182, 14 S.Ct. 71, 37 L.Ed. 1044.

█ Equity follows the law not only in its letter, but its spirit. Farm Mortgage Loan Co. v. Pettet, 51 N.D. 491, 200 N.W. 497 (1924). Consequently, we conclude that the defendants obtained their warranty deed in violation of the express inhibition contained in our penal statute, which renders it champertous and void. Therefore, we cannot in good conscience and good faith approve, sustain and affirm a judgment of the district court quieting title to real property which is based upon a warranty deed that is champertous and void.

We come next to the fourth issue for decision, and that is whether, after eliminating and excluding all oral or extrinsic evidence that is incompetent and inadmissible under the parol evidence rule, together with the warranty deed, which we held is champertous and void, there is enough competent evidence in the record, independent of and separate from that which is incompetent, to sustain the judgment of the district court quieting the defendants' title to the premises described in their warranty deed?

On this issue we find that the defendant offered the testimony of three witnesses, namely Keith Green, James Taylor and Tony Nelson, each of whom testified, in effect, that Loren Gajewski, one of the plaintiffs, had told them that he helped Glenna out, that he had advanced or loaned her some money and that he only farmed the land until he got his money back or until Glenna paid what she owed him. All of which Loren Gajewski specifically denied.

Further, Glenna Gajewski testified, in substance:

(a) That she paid all of the charges made for electric service furnished to the residence on said premises until 1964;

(b) That she paid the premiums due on an insurance policy covering the residence located on said premises; and

(c) That she paid the bill for spraying of the wheat crop raised upon said land during the farming season of 1964.

The plaintiffs admitted that Glenna made such payments, but claimed, on the contrary, that Glenna had agreed to pay for the electricity furnished to the home and the premiums due on the policy of insurance covering the home because she had the privilege to occupy the same, which she did until April 1963. They sprayed her wheat crop in 1965 and paid for such service to reimburse her for what she paid for spraying their wheat crop in 1964.

█ The defendants had the burden of proof and had to establish that the quitclaim deed was delivered for the purpose of security only by evidence that is clear, satisfactory and convincing. Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842 (1952); Ives v. Hanson, 66 N.W.2d 802 (N.D. 1954).

The question arises whether the defendants have sustained that burden by competent evidence.

We have determined that they have failed to do so for the reasons:

(1) We are convinced that Glenna knew the difference in meaning and legal effect between a quitclaim and a warranty deed, because she was a high school graduate, had three summers of training at college, and taught in public schools for five years. She gave a quitclaim deed to the plaintiffs and a warranty deed to the defendants.

She testified, upon examination by defendants' attorney,

"Q. Was there any discussion, Mrs. Gajewski, about a warranty deed?

"A. Well, that's what we got in the first place was a warranty deed and they refused it. They sent it back for a quitclaim deed."

And, when Loren Gajewski inquired,

"Did I indicate to you that either you or Lloyd owns this Reinhold Gajewski farm at any time after December 6, 1961?

she answered,

"You never talked about it. It was always your place."

(2) We are equally satisfied that Lloyd Gajewski knew the difference between a quitclaim and a warranty deed; that although he claimed that he did not know that the title to real property could be conveyed and transferred by quitclaim deed, he admitted that he conveyed his undivided one-half interest in the premises in issue to his mother by quitclaim deed on September 30, 1963; and that he, with his mother, gave a quitclaim deed to the plaintiffs.

The record clearly shows that he knew the difference between such deeds, for he testified, upon inquiry by Loren Gajewski:

"Q. Mr. Gajewski, how many documents do you recall being involved in this transaction involving this four thousand dollars?

"A. Well, there was a warranty deed offered.

"Q. There was what?

"A. A warranty deed we offered Loren at the beginning.

"Q. I see.

"A. And he rejected it."

And, when Loren Gajewski inquired,

"Q. How much more money would you have gotten if we had taken that warranty deed?

"A. If we had sold it outright?

"Q. I asked you how much money you would have gotten if we would have taken the warranty deed instead of this quitclaim deed?

"A. Possibly an extra two thousand bucks, maybe."

These answers prove that Lloyd Gajewski knew the difference between such deeds and that he remembered the amount of money they agreed to take in plaintiffs' Exhibit 8 upon the delivery of a recordable warranty deed.

(3) Analysis of the relevant facts established by the clear weight of the evidence show:

(1) That no note evidencing the debt of $4,000 was given by Glenna and Lloyd Gajewski to the plaintiffs nor was there any date specified for the payment of said debt or any reference to the rate of interest due thereon.

(2) That the admissions by both the grantors prove that they voluntarily prepared and freely offered a warranty deed to the plaintiffs in the first instance and that they had a quitclaim deed prepared only after the plaintiffs had objected to the warranty deed on the ground that it was not signed by Lloyd Gajewski's wife.

(3) That the plaintiffs' Exhibit 8 reserved one-half interest in and to the minerals lying in and under said premises. Surely, if no sale was intended, and the title was to remain in the grantors, then no reservation of minerals was required.

(4) That the sum of $4,000 which the plaintiffs paid in cash to the grantors was clearly a part of the sales price of said premises as evidenced by plaintiffs' Exhibit 8, the execution and delivery of which was admitted and the contents thereof was never disputed or denied.

(5) The surrender of possession of said land with the improvements located thereon to the plaintiffs and their continuous exercise of control and dominion over the land and improvements located thereon.

(6) That the plaintiffs received all of the crops, rentals and profit derived from the use and occupancy of said premises from 1962 until 1966, inclusive.

(7) That the grantors paid the taxes upon said premises for the years 1960 and 1961 in accordance with their promise so to do in plaintiffs' Exhibit 8.

(8) That the grantees paid all of the taxes levied and assessed against said premises from the year 1962 to the year 1966, inclusive.

(9) That the plaintiffs purchased, installed and paid for a steel grain bin for the storage of their grain, and improved a dike located thereon.

(10) That there is no claim or proof that Exhibits 8 and 13 were obtained through fraud, mistake or accident, nor that said Exhibits did not express the true intention of the parties.

(11) That during the Spring of 1965 Glenna Gajewski submitted her application to the agent of the federal conservation agency at Williston requesting that he separate and split the two quarters of land into two separate farm units because the plaintiffs did not wish to participate in the federal conservation programs, while she

did. And when she inquired of Lyle Bratcher what she should say to the agent, he said she should say that this was a cash deal, which explains why said agent made the notation to that effect upon plaintiffs' Exhibit 15. Obviously, if the quitclaim deed was given for the purpose of security only and she retained the title to the land in issue, then no separation of said premises into two farm units was necessary.

Moreover, our statute provides that several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together. Section 9–07–07, N. D.C.C.; Knox v. Krueger, 145 N.W.2d 904 (N.D.1966).

■ We therefore construe the quitclaim deed, plaintiffs' Exhibit 9, in the light of the terms and conditions of Exhibits 8 and 13, the execution, the delivery and the contents of which have not been disputed or denied, and when so interpreted and considered with the facts set out herein we believe and conclude that these facts not only contradict and impeach, but are absolutely inconsistent with, the claim of the defendants that the quitclaim deed was delivered for the sole purpose of security, but, on the contrary, they are much more reasonable, probable and consistent with and sustain the claim of the plaintiffs that the quitclaim deed in issue was delivered with the intent to sell, transfer and convey all of the right, title and interest of the grantors in the premises to the grantees therein.

■ Further, the defendants' cross-complaint to determine adverse claims and to quiet their title to the premises described in their warranty deed is essentially an equitable action, and, therefore, must be decided upon equitable principles. It is an elementary maxim in equity that "He who seeks equity must do equity" and must come into court with clean hands. Since we have held that the defendants were not purchasers in good faith and that their warranty deed is .champertous and void,

the defendants cannot invoke the aid of a court of equity nor seek its assistance in the wrongful deprivation of the property of another. Courts of equity cannot approve the breach of written contracts prohibited by law nor sanction conduct which is plainly unjust and inequitable. For these reasons we find and determine that the defendants have failed to prove that the quitclaim deed in question was delivered for the purpose of security only by evidence that is clear, satisfactory and convincing, and that by reason thereof the judgment of the district court quieting their title is clearly unsound and erroneous and as such it cannot be sustained.

Finally, we reach the last and fifth issue for our decision and that is whether the plaintiffs have established facts sufficient by a fair preponderance of the evidence to warrant and to justify the entry of judgment in their favor against said defendants quieting their title in the premises described in their quitclaim deed against all of the adverse claims of the said defendants thereto.

On this issue the undisputed facts show (1) that Glenna and Lloyd Gajewski were the owners in fee simple of the premises described in the quitclaim deed; (2) that the quitclaim deed transferred all of their right, title and interest in said land to the plaintiffs as grantees; and (3) that said deed was voluntarily delivered to the plaintiffs on or about the 6th day of December, 1961.

▮ It is elementary in law in this State:

(1) That an action to determine adverse claims is essentially an equitable action. Neset v. Rudman, 74 N.W.2d 826 (N.D. 1956);

(2) That where the plaintiffs, as here, are suing to quiet title to realty, as they have in their cause of action, they must rely upon the strength of their own title and not the weakness of the adversary, if they are to prevail at all. Hogue v. Bour-

gois, 71 N.W.2d 47 (N.D.1955); Woodland v. Woodland, 147 N.W.2d 590 (N.D.1967); and

(3) That the plaintiffs had the burden of proof and had to establish not only that the trial court erred but that such error was highly prejudicial to their substantial rights. Zimmer v. Bellon, 153 N.W.2d 757 (N.D.1967).

Further, our pertinent statutes provide, in part:

(a) That "A transfer vests in the transferee all the actual title to the thing transferred which the transferor then has unless a different intention is expressed or is necessarily implied." Section 47–09–16, N.D. C.C.

(b) A quitclaim deed is one which purports to convey and is understood to convey nothing more than the interest or estate in the property described of which the grantor was seized or possessed, if any, at the time of the execution and delivery thereof. Frandson v. Casey, 73 N.W.2d 436 (N.D.1955). Hence, where, as here, the record shows without dispute that the grantors were the owners of the fee simple title to said premises at the time of the execution and delivery of the quitclaim deed, it necessarily follows that the plaintiffs acquired their fee simple title thereto by virtue thereof.

Counsel for the defendants insist, however, that the quitclaim deed delivered to the plaintiffs was void because the names of the grantees were left in blank at the time of its delivery.

We are satisfied that this contention is unsound and untenable for the reasons:

That the grantors admitted that the name of the grantees was left in blank at their request. And while it is true that both the plaintiffs could not fix the specific time when they typed in their names as grantees, Glenna Gajewski testified that Loren typed in their names on the spot when he discovered it, which Loren did not deny.

On this question we have held, "A deed delivered with the name of the grantee therein blank, with no proper authorization shown to fill in the name of the grantee, is void on its face." Brugman v. Charlson, 44 N.D. 114, 171 N.W. 882 (1919).

 It is the general rule that where the names of the grantees are left in blank, at their request, that in such case the law reasonably and necessarily implies consent to insert the names of the grantees, where, as here, the grantors knew that the names of the grantees were to be written in by them and did not object thereto. 23 Am. Jur.2d, Deeds, § 57; 26 C.J.S. Deeds §§ 25 and 26.

In Johnson v. Rost, 164 Minn. 154, 204 N.W. 642 (1925), the Supreme Court of Minnesota said that the blank space for the name of the grantee in the deed may be filled in during the lifetime of the grantors under his parol authority, and when so filled in the deed is a legal conveyance.

Again, in Osborn v. Gamble, 213 Or. 127, 322 P.2d 926, 928 (1958), the Supreme Court of Oregon held:

"When the defendants Gamble executed and forwarded the conveyance of the farm land to plaintiff leaving the names of the grantees in blank, they authorized to be inserted therein the names of any grantees the plaintiff desired."

And, further, in Hanson v. Beehive Security Company, 14 Utah 2d 157, 380 P.2d 66, 67 (1963), the Supreme Court of Utah, in passing upon a similar question, said:

"It requires but little reflection to bring to mind the multifarious mischief that might result to titles if a grantor who had signed and acknowledged a deed such as. the instant one, which was in every respect complete on its face, could repudiate it by parol evidence on the ground that the name of the grantee was not filled in when he signed it."

We believe that the principles of law established by these decisions are applicable to and decisive of the defendants' contention and that where, as here, the grantors delivered the quitclaim deed with the express understanding that the names of the grantees were to be filled in by the parties to whom the deed is delivered that in such case they are duly authorized to do so, and consequently the claim that the quitclaim deed was null and void by reason thereof is unsound and devoid of merit.

We, therefore, remand the case to the district court with instructions that it issue its order:

(1) Directing that said judgment be vacated and set aside; and

(2) Authorizing the entry of judgment to quiet the title of the appellants in the premises described in the quitclaim deed, as joint tenants with right of survivorship, in accordance with the provisions of § 32–17–10, N.D.C.C., and this decision.

We deem it advisable to state that our reversal of said judgment will necessarily operate to reinstate the second to the fifth causes of action, inclusive, contained in the plaintiffs' amended complaint, that have not yet been tried and with respect to which we have not and do not express any opinion as to the merits thereof.

 Finally, we are convinced that there is another sound and decisive reason why the defendants cannot question the right of the plaintiffs to the recovery of judgment quieting their title to the premises in issue and that is, since we have held that their warranty deed is champertous and void, they do not own or possess any right, title or estate in said premises, or any interest therein which this court could protect, and consequently they have no legal standing in this action to challenge the validity of their quitclaim deed nor their right to have the title evidenced thereby quieted in them.

Considering the facts we have set forth herein and the conclusions of law which we have reached, we are firmly convinced:

(1) That the findings of fact of the trial court are without adequate evidentiary support; that a serious mistake has been committed; and that the findings of the trial court in this action are clearly against the great weight of the evidence and erroneous; and

(2) That the conclusions of law based thereon are unsound, inconsistent and contrary to the controlling principles of law applicable to the facts as we have found them to be; and therefore the judgment of the district court must be and the same is hereby reversed.

We remand the case to the district court with instructions to vacate and set aside said judgment and to order the discharge thereof of record, if any, and to quiet the title of the plaintiffs in fee simple to the premises described in the quitclaim deed, as joint tenants with right of survivorship, in accordance with the provisions of Section 32–17–10, N.D.C.C., and this decision.

Finally, we deem it advisable to state that our reversal of said judgment will necessarily operate to reinstate the second to the fifth causes of action inclusive, contained in the plaintiffs' amended complaint, which have not yet been tried and with respect to which we have not and do not express any opinion as to the merits thereof.

ERICKSTAD, C. J., and TEIGEN, PAULSON and KNUDSON, JJ., concur.

The Honorable ROBERT VOGEL deeming himself disqualified did not participate; the Honorable C. F. KELSCH, Judge of the Sixth Judicial District sitting in his place.

C. F. KELSCH, District Judge (on petition for rehearing).

The defendants, Lyle and Sharon Bratcher, have served and filed a petition for rehearing wherein they claim that this court committed prejudicial error in its decision when it held, in effect:

(1) That in the absence of fraud, mutual mistake or accident, oral or intrinsic evidence is incompetent and inadmissible under the parol evidence rule to prove that a quitclaim deed, absolute in its terms, was executed and delivered for the sole and only purpose of security, and that this court had not only the legal right but the explicit duty to disregard and to exclude such evidence from its consideration in the rendition of its decision upon the merits;

(2) That the defendants, Lyle and Sharon Bratcher, failed to prove that the quitclaim deed, in issue, was executed and delivered for security only by evidence that is clear, satisfactory and convincing, and that the findings of the trial court to the contrary were unsound and clearly erroneous; and

(3) That the defendants, Lyle and Sharon Bratcher, acquired their warranty deed, in issue, in violation of the express penal provisions of Section 12–17–14, N.D.C.C., and that, by reason thereof, it was champertous and void.

We deem it necessary and advisable to answer these three assignments of prejudicial error separately, in the order set forth herein.

ASSIGNMENT OF ERROR NO. 1

The contention of counsel for said defendants in support of this assignment of prejudicial error is twofold:

(1) That the decision of this court overrules, without a passing reference to the rule established and maintained by this court from 1894 to the present time; that in equitable actions parol testimony is admissible to show that a deed, absolute in its terms, was in fact intended only as security for the performance of some act. He relies upon the following decisions to sustain this contention: Burr v. Kelley, 74 N.W.2d 428 (N.D.1956); Ginter v. Ginter,

63 N.W.2d 394 (N.D.1954); Mechtle v. Topp, 78 N.D. 789, 52 N.W.2d 842 (1952); Altenbrun v. First National Bank, 47 N.D. 266, 181 N.W. 590 (1921); Miller v. Smith, 20 N.D. 96, 126 N.W. 499 (1910); McGuin v. Lee, 10 N.D. 160, 86 N.W. 714 (1901); Jasper v. Hazen, 4 N.D. 1, 58 N.W. 454 (1894);

(2) That the rule established in Jasper v. Hazen, *supra*, and Miller v. Smith, *supra*, is not only the prevailing rule in this state but the universal rule in courts of equity in this country, and cites decisions from other states in support thereof.

We have carefully examined the decisions in *Jasper* and *Miller* and find and conclude:

(1) That the record shows that *Jasper* was before this court three times; that in the first appeal reported in 1 N.D. 75, 44 N.W. 1018 (1890), the court set forth the facts alleged in the plaintiff's complaint, wherein the plaintiff claimed, in substance, that the defendant promised that if plaintiff would give him a warranty deed to his land and possession of his personal property, that he would farm it, pay up the mortgage, deduct a reasonable sum from the income for his services, and would return the land and personal property to him, upon demand; that he believed and relied thereon, gave the defendant a warranty deed to his land and delivered his personal property to him; that the defendant breached his promises in violation of his trust, "with intent to cheat and defraud plaintiff, and to enable defendant to convert the same to his own use." Obviously, fraud was specifically alleged and relied upon in *Jasper*, and therefore the parol evidence rule did not apply. Consequently, oral testimony was admissible to show that a deed, absolute in its terms, was in fact intended as security for the performance of an act, as the court correctly held:

(2) That in Miller v. Smith, *supra*, the court held that parol evidence was admissible to prove the intention of the parties at the time of the transaction, under Section 6153, R.C.1905, which is shown as Section 35–02–04 in the Century Code and which has since been repealed by Chapter 296, Section 32, S.L.1965 (Vol. 7, p. 95);

(3) That in *McGuin, Altenbrun, Mechtle, Ginter* and *Burr,* relied upon by counsel, the record shows that this court considered oral testimony to prove that a deed, complete, unambiguous and absolute in its terms, was in fact a mortgage, but the decisions of this court in each of these cases was based upon the sufficiency or insufficiency of the testimony to prove that the deed involved therein was, or was not, a mortgage, by evidence that was clear, satisfactory and convincing. In none of the decisions in these cases does the record show: (a) whether the complaint or answer specifically alleged fraud, mistake or accident, (b) whether there was any objection to the competency and admissibility of oral testimony under the parol evidence rule, or (c) that this court expressly held, as counsel claims and infers, that oral testimony was admissible to show that a deed, complete, unambiguous and absolute in its terms, was in fact a mortgage given as security for the payment of a debt, even though there was no specific allegation or reliance in either the complaint or answer upon fraud, mistake or accident.

 It is true, as counsel for defendants claims, that as a general rule parol evidence is admissible in equitable actions to have a deed declared a mortgage or a trust, or to establish the right to repurchase, or for the redemption of real property, where there are no statutory restrictions to the contrary.

 We are firmly convinced, after a critical analysis of our statutory provisions as we have interpreted them, that they contain several specific restrictions which forbid and preclude the admission of oral testimony in equitable actions to prove that a deed, complete, unambiguous and absolute in its terms, in the absence of a specific allegation of fraud, mistake or accident,

was executed and delivered as security only, subject to the right to repurchase or the right of redemption by the grantors.

They are:

1. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this chapter." Section 9–07–04, N.D.C.C. MacMaster v. Onstad, 86 N.W.2d 36, 38 (N.D.1957).

2. "When through fraud, mistake, or accident a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded." Section 9–07–05, N.D.C.C. Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100 (1946); Verry v. Murphy, 163 N.W.2d 721 (N.D.1969).

3. "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Section 9–06–07, N.D.C. C. Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606 (1951).[1]

4. "A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise." Section 9–09–06, N.D. C.C. Northwestern Equipment v. Tentis, 74 N.W.2d 832 (N.D.1956).[2]

5. "A grant cannot be delivered to the grantee conditionally. Delivery to him or to his agent as such is neces-

sarily absolute and the instrument takes effect thereupon, discharged of any condition on which the delivery was made." Section 47–09–07, N.D. C.C. Arhart v. Thompson, 75 N.D. 189, 26 N.W.2d 523 (1947); Adams v. Little Missouri Minerals Association, 143 N.W.2d 659 (N.D.1966).

6. "Every grant of an estate in real property is conclusive against the grantor and every one subsequently claiming under him, except a purchaser or encumbrancer who in good faith and for a valuable consideration acquires a title or lien by an instrument that first is duly recorded." Section 47–10–08, N.D.C.C. Kittelson v. Collette, 61 N.D. 768, 240 N.W. 920 (1932).[3]

We are satisfied that these rules of substantive law apply not only to actions in courts of law but are equally applicable in courts of equity.

■■■■ But counsel for the defendants contends strenuously, however, that this interpretation is unsound and contrary to the universal rule in courts of equity in this country. We disagree, for the following reasons:

(1) That the decisions of courts of other jurisdictions are not controlling or binding upon the courts of this state, but its rules of substantive law, expressive of its public policy, are binding upon them;

(2) That it is elementary in this state that equity not only follows the létter but the spirit of the law. Farm Mortgage Loan Co. v. Pettet, 51 N.D. 491, 200 N.W. 497, 36 A.L.R. 598 (1924);

---

1. In which we held, in effect, that this section is not an evidentiary or interpretive rule, but rather one of substantive law.

2. Where we also held that a contract in writing may only be altered by a contract in writing or an executed oral agreement, and is not a rule of evidence but of substantive law.

3. Where we held, in part: (a) that a deed constitutes a written contract, subject to

parol evidence rule, and (b) rule excluding parol evidence to explain, modify or contradict written contract applies only to parties to such contract and their privies. Hull v. Rolfsrud, 65 N.W.2d 94 (N.D.1954); Bolyea v. First Presbyterian Church of Wilton, N.D., 196 N.W.2d 149 (N.D.1972); 72 C.J.S., Privity; Privies; Privy, at 954.

(3) That in Hedges v. Dixon County, 150 U.S. 182, 14 S.Ct. 71, 37 L.Ed. 1044 (1893), the Supreme Court of the United States held:

"The established rule, although not of universal application, is that equity follows the law * * * 'that, wherever the rights or the situation of parties are clearly defined and established by law, equity has no power to change or unsettle those rights or that situation, but in all such instances the maxim * * * [that equity follows the law] is strictly applicable.' ";

(4) That this rule has been recognized and approved by this court, (a) in Wade v. Major, 36 N.D. 331, 162 N.W. 399 (1917), where we said:

"A court of equity is not vested with arbitrary powers. It may not assume to decide the facts of a controversy according to its own standard of right, independently of fixed rules. On the contrary, a court of equity is governed in its judicial functions by doctrines and rules as fixed as those governing the actions of a court in a suit at law. If this were not so, every decision would be a virtual arbitration, and all certainty in legal rules, and security of legal rights would be lost."

and (b): "That . . . equity must not accomplish by indirection what the law has prescribed must not be done directly." Bartelson v. International School Dist. No. 5, 43 N.D. 253, 174 N.W. 78 (1919).

We are firmly convinced that courts of equity are bound by and must follow and apply the principles of substantive law set out herein; that there must be one uniform standard or rule which applies to all actions whether in law or in equity. This is not an unreasonable, arbitrary or unjustifiable departure from long-established rules with respect to the admissibility of parol evidence in courts of equity, as counsel contends, but, on the contrary, constitutes a sound, consistent and rational development of the law which renders principles of substantive law and the parol evidence rule reasonable and uniform in their applicability, and equitable and nondiscriminatory in their legal effect.

 Manifestly, any other interpretation of the principles of substantive law set out herein would empower courts of equity (1) to deprive litigants of the uniform protection of the principles of substantive law in the determination of their legal rights and liabilities under instruments affecting the title to real property, and (2) to establish its own standard of right or wrong, or rules of law or of evidence as the conscience of the court might dictate, in disregard of the mandate of the law, and thereby not only destroy the salutary value of all written contracts but undermine and destroy the stability and security of the title to real property evidenced by written instruments. We cannot sanction or approve a rule of evidence which is absolutely inconsistent with and violative of the principles of substantive law expressive of the public policy of this state.

Considering our interpretation of the principles of substantive law set out herein, we firmly believe that an accurate and correct statement of the law as to when the parol evidence rule does or does not apply is imperative, not only for a determination of the soundness of the defendants' contention but also to remove and dispel a reasonable doubt, if any exists, as to the validity of the conclusion in our original decision that the parol evidence rule is applicable to and decisive of the legality of the quitclaim deed involved herein.

 The rules clearly established by our applicable decisions, precisely and correctly stated, are as follows:

(1) That where, in an action at law or in equity, fraud, mistake or accident is sufficiently and specifically alleged and relied upon in the complaint, answer or cross claim, in such case the parol evidence rule does not apply and, therefore, oral testimony is competent and admissible to prove that a deed, even though it is complete,

unambiguous and absolute in its terms, was in fact intended by the parties as a mortgage for the payment of a debt. Section 9–07–05, N.D.C.C.; Schue v. Jacoby, 162 N.W.2d 377 (N.D.1968); Hartford Accident and Indemnity Co. v. Anderson, 155 N.W.2d 728 (N.D.1968); Wilson v. Polsfut, 78 N.D. 204, 49 N.W.2d 102 (1951); Carufel v. Kounts, 60 N.D. 91, 232 N.W. 609 (1930); Jasper v. Hazen, *supra*; and

(2) That, on the contrary, where, in an action at law or in equity, a deed or other written instrument is complete, unambiguous and absolute in its terms and there is no sufficient or specific allegation of fraud, mistake or accident in the complaint, answer or cross claim, the parol evidence rule, as we have defined it, is applicable, and therefore oral testimony is incompetent and inadmissible to vary, contradict or impeach a deed or other written instrument, or to prove that such a deed was in fact intended by the parties as a mortgage to secure the payment of a debt, for the reason that, in such case, the deed is not only the best but the only evidence that is admissible to establish the true intention of the parties thereto. Sections 9–07–04, 9–06–07 and 9–09–06, N.D.C.C.; Zimmer v. Bellon, 153 N.W.2d 757 (N.D.1967); First National Bank, Bismarck v. O'Callaghan, 143 N.W.2d 104 (N.D.1966); Ives v. Hanson, 66 N.W.2d 802 (N.D.1954); Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606 (1951); Forester v. Van Auken, 12 N.D. 175, 96 N.W. 301 (1903).

▇▇▇ In our original decision we found and concluded, in substance:

(1) That although the names of the grantees were left in blank at the time of the delivery, that after their names were written in, pursuant to implied authority, the quitclaim deed in issue was complete, unambiguous and absolute in its terms and, as such, it was valid and binding upon the parties thereto, and their privies. Kittelson v. Collette, *supra*; and

(2) That where, as here, the deed in issue was ·complete, unambiguous and abso-

lute in its terms and the answer or cross claim of the defendants did not contain a specific allegation or reliance upon fraud, mistake or accident, in such case the parol evidence rule, as we have defined it, was applicable to the issues presented by the pleadings and the clear weight of the evidence adduced in support thereof, as we correctly held in our original decision.

We are confident, from a critical analysis of our rules, substantive law and decisions cited herein in support thereof, that our original decision on this issue is sound and correct and that the defendants' claim that we committed prejudicial error with respect thereto is devoid of merit in fact and in law.

## ASSIGNMENT OF ERROR NO. 2

On this issue counsel contends that we erred in concluding that the said defendants had failed to prove that the quitclaim deed in issue was executed and delivered for the purpose of security only, by evidence that was clear, satisfactory and convincing, and that the findings of fact of the trial court were against the great weight of the evidence and were clearly erroneous.

Upon review of our conclusion that the findings of the trial court were clearly erroneous, we take notice of the fact that, in our original decision, we set out the facts which we found to have been established by the clear weight of the evidence and we find that the defendants' counsel has made no claim in his petition for a rehearing, (a) that the evidence upon which we relied did not support the facts we found to be clearly established by the evidence, (b) that we misstated the material testimony of any witness, or (c) that we failed to give to other relevant facts established by the evidence its probative value.

▇▇▇ Furthermore, we desire to emphasize two more sound and decisive reasons to sustain our original decision. They are:

(1) That one of the most decisive tests to determine what the intentions of the par-

ties were is whether there exists a debt from the grantor to the grantee, as there can be no mortgage without a debt or liability to be secured thereby. Miller v. Smith, *supra*; Ginter v. Ginter, 63 N.W.2d 394 (N.D.1954); Dean v. Smith, 53 N.D. 123, 204 N.W. 987 (1925). The evidence in this case shows, without dispute, (a) that the plaintiffs' grantors were not indebted to them at the time the deed was delivered, and (b) that no debt was contemporaneously created by the execution and delivery thereof because Exhibits 8, 9 and 13 show, with reasonable certainty, that the $4,000 paid to the grantors was not intended as a loan of money but as a part payment of the purchase price of the land described in the quitclaim deed; and

(2) The grantors must prove by evidence that is clear, satisfactory and convincing that a mistake was made and that it was mutual. Wilson v. Polsfut and Ives v. Hanson, *supra*. There is no substantial evidence in this case that the mistake was made, much less that it was mutual.

Finally, in Hofer v. W. M. Scott Livestock Company, 201 N.W.2d 410 (N.D. 1972), we quoted with approval from the decision of the United States Supreme Court in United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), to the effect: (1) " 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed' " or "if the finding is without adequate evidentiary support or is induced by an erroneous view of the law."

Testing the sufficiency of the evidence by this rule, we find and conclude that a careful review of the evidence in its entirety, in the light of the applicable principles of substantive law, has left us with a firm conviction that a serious mistake has been made which warrants and sustains our original decision that the findings of fact of the trial court are clearly erroneous.

## ASSIGNMENT OF ERROR NO. 3

On this assignment of error counsel for the defendants claims that Lyle Bratcher, who handled this transaction, was a purchaser in good faith for value, and consequently we erred in our decision that his warranty deed was champertous and void. We set out the facts established by the clear weight of the evidence, which are not only supported by his conduct but by his solemn admissions under oath. Their accuracy and sufficiency have not been challenged by counsel in his petition for rehearing. They cannot be reconciled with an honest claim that he was a purchaser in good faith in the light of his actual knowledge, and the ample opportunity he had to find out the truth and ascertain the nature of the title under which the plaintiffs were in adverse possession of the premises described in his warranty deed. This he did not do because of the apparent fear that a diligent inquiry of the plaintiffs would have revealed not only the existence of the quitclaim deed but also the agreements (plaintiffs' exhibits 8 and 13 executed and delivered in connection therewith).

We are satisfied that the facts we set out in our original decision bring this case clearly within the prohibitory restrictions contained in our penal statute. Section 12–17–14, N.D.C.C. This conclusion is consistent with and justified by our decision in Accola v. Miller, 76 N.W.2d 517, 519 (1956), where we said:

"A conveyance of real estate executed in violation of Section 12–1714, NDRC 1943 is void but its invalidity extends only to the party in adverse possession claiming title;"

The undisputed evidence shows that the defendant, Lyle Bratcher, did not only have constructive but actual notice that the plaintiffs were in adverse possession, claiming title under a quitclaim deed, which renders his warranty deed champertous and void and, consequently, the defendants have no standing in this action to challenge the

validity of plaintiffs' title to the land in issue, as we held in our original decision. It must be self-evident from the facts we have found, the interpretation we have placed upon our pertinent statutes, and the conclusions we have reached herein that we are firmly convinced that our original decision is sound, just and right and is sustained by ample authority. We therefore adhere thereto. Under these circumstances a reargument would serve no useful purpose. Therefore, the petition for rehearing must be and the same is hereby denied.

ERICKSTAD, C. J., and KNUDSON and PAULSON, JJ., concur.